O. A. ORVIS, Appellant, v. O. ELLIOTT, Respondent.

Kansas City Court of Appeals, February 3, 1896.

1. **Trial Practice**: JUDGMENTS: SETTING ASIDE. During the term at which a case is finally disposed of, the records are in the breast of the court and they may be corrected, modified, or set aside at the will of the trial judge. After that term, however, he has no such power.

2. **Judgments**: IRREGULAR: ERRONEOUS: SETTING ASIDE. An irregular judgment is one rendered contrary to the course of law and practice; an erroneous judgment, though regularly rendered, is contrary to law and liable to be reversed. The former may be set aside on motion at a subsequent term within three years after its rendition.

3. ———: TRIAL PRACTICE. A judgment rendered against the claimant of money in the hands of a garnishee for failure to plead is not irregular however erroneous it may be.

4. ———: WHAT IS. A judgment is a conclusion of the law upon facts found or admitted by the parties, or upon default in the course of the suit; or, in other words, a judgment is the final consideration and determination of a court of competent jurisdiction upon matters submitted to it.

5. ———: GARNISHMENT: INTERPLEADER: TRIAL PRACTICE. The garnishee's answer disclosed funds and set up notice prior to service of the assignment of the funds to a third party, who entered his appearance after the order of the court and took leave to file his bill of interpleader. In this he defaulted and the court rendered judgment for the plaintiff in the garnishment and barred the claimant of making any claim of the money. *Held,* a regular and valid exercise of the jurisdiction of the court.

*Appeal from the Jackson Circuit Court.*—HON. E. L. SCARRITT, Judge.

REVERSED AND REMANDED.

*Robert Adams* for appellant.

(1)    Elliott, the interpleader, after the lapse of the term at which the judgment against him was rendered,

can not have such judgment corrected or annulled by motion. His remedy was by appeal. The *res* was in court. Elliott was duly served and his remedy was by motion to set aside during the term at which it was rendered; and failing, then by appeal. *State ex rel. v. Harper*, 54 Mo. App. 286; *Jones v. Hart*, 60 Mo. 351; *Woolridge v. Quinn*, 70 Mo. 371; *Rees v. McDonald*, 115 Mo. 145; *Rosenheim v. Hartsock*, 90 Mo. 357–365; *O'Riley v. Nicholson*, 45 Mo. 163; *Gray v. Bowles*, 74 Mo. 419; *State ex rel. v. Donegan*, 83 Mo. 105; *Yeoman v. Younger*, 83 Mo. 424; *McIlwrath v. Hollender*, 73 Mo. 105; *Fields v. Maloney*, 78 Mo. 179; *Lewis v. Morrow*, 89 Mo. 174–179; *Babb v. Bruere*, 23 Mo. App. 604, 607, 608; *Hall v. Lane*, 27 S. W. Rep. 546, and cases cited; *Bank v. Moss*, 6 How. 31; *Hughes v. Hardesty*, 13 Bush, 364. (2) The decision of the court upon the right of Elliott to the funds in the hands of the garnishee became the law of the case and is conclusive of the question and became *res judicata*. *Choteau v. Gibson*, 76 Mo. 38; *Brewing Co. v. Levvie*, 41 Mo. App. 584, 588; *Dodge v. Gaylord*, 53 Ins. 365, and cases cited; *Lucas v. San Francisco*, 28 Cal. 591; *Rountree v. Turner*, 36 Ala. 555; *Hawley v. Smith*, 45 Ind. 183; *Braden v. Graves*, 85 Ind. 92; *Ins. Co. v. Clement*, 77 Va. 366; *Hiller v. Cook*, 77 Va. 528; *Roberts v. Cooper*, 20 How. 467; *Supervisors v. Kennicott*, 94 U. S. 498, and cases cited.

*Frank Titus* for respondent.

(1) Appellant complains of the court below in permitting Elliott to file his interplea, and in setting aside the *ex parte* order pretending to bar his rights. The court's action was in accord with both law and justice. No change in the status of either of the parties to the controversy or the funds involved had occurred

when the court permitted the interplea to be filed. Such permission is within the discretion of the court, even though contrary to some rule, where no one is prejudiced. *Brownell v. Barnard*, 116 Mo. 667–672. (3) The errors alleged do not exist. Appellant assumes that the *ex parte* order of July 6, 1892, pretending to bar Elliott from making claim to a debt, is a final judgment. This assumption is not in accord with the law. Section 2206, Revised Statutes of Missouri, defines a judgment as the final determination of the right of the parties in the action. In this case as regards such order Elliott was not a party in the action, nor was there any final determination as to his property rights. The order was merely interlocutory, made in the course of the proceedings and was in no sense final, nor an appealable one. *Greeley v. Railroad*, 123 Mo. 157. The order was made under the authority of section 5242, Revised Statutes of Missouri.

GILL, J.—Orvis brought an attachment suit against Nathan, and the Central Bank was summoned as garnishee. At the October term (1891) of the Jackson circuit court, the bank answered interrogatories, admitting that it owed Nathan the sum of $783.50, but that it had notice, before service of the garnishment, that Nathan had assigned the claim to Elliott and that said Elliott then asserted a right thereto. The garnishee bank prayed that the claimant Elliott be brought into court and his rights in the fund be adjudicated. In reply, the plaintiff Orvis denied that Elliott had any interest in said debt and joined in the request that said claimant be summoned into court for an adjudication of his rights. The court thereupon made an order on Elliott to appear on May 21, 1892, and sustain his alleged claim. The court's order was duly served and Elliott appeared by attorney and took leave to file his

interplea, on or before May 28, 1892; and on said date and at his request further time was given Elliott to interplead; that is, until June 3, 1892. But said Elliott failed to file any claim; and on July 6, 1892 (during the April term), the court, after reciting service of the order and that said Elliott had failed to file or make any claim or to interplead for said debt in the hands of the garnishee "ordered and adjudged that the averment in the answer of the said garnishee that said debt had been assigned to said O. Elliott be disregarded, and that said O. Elliott be and is hereby forever barred from setting up and making any claim to said debt, and that if said O. Elliott ever had or made any claim to said debt, that such claim be held for naught."

This final judgment against Elliott was entered, as already stated, during the April term, 1892. There was no further appearance by Elliott until in the January term, 1894, when he came into court and filed a motion to set aside and hold for naught the judgment against him, and that he be permitted to interplead for the fund held by the garnishee bank, filing along with said motion his interplea or claim.

The court, in effect, sustained Elliott's motion to set aside the judgment entered at the April term, 1892, and proceeded to hear and determine the issues made by the claim or interplea filed at the January term, 1894. This resulted in a judgment establishing interpleader Elliott's claim to the property, and plaintiff Orvis appealed.

From the foregoing statement, it will be seen that the circuit court, on the motion of an unsuccessful litigant, set aside a judgment, though the same was rendered at the fifth term prior to the filing of said motion. This was error. While courts have the power to set aside, because of irregularities, their judgments on motions filed after the term at which the

same are rendered, it is well settled that where the judgment is merely erroneous, such relief must be sought by a motion filed during the judgment term.   During the term at which the case is finally disposed of, the records are in the breast of the court and they may be corrected and set aside, or modified at the will of the trial judge.    After that, however, he has no such power.    Many of the cases announcing this rule will be found cited in 1 McQuillin's Pleading and Practice, section 889.    If the trial court shall, in the estimation of the complaining party, commit prejudicial error, the remedy is by appeal, or writ of error.    The litigant can not pass this over and come into court at some subsequent term and on motion then filed get the court to set aside its judgment rendered at a former term.

But interpleader's counsel insists that the judgment entered July 6, 1892, was *irregular*, and not merely erroneous, and, therefore, subject to be set aside, on motion, at any subsequent term within three years after its rendition.   If the judgment was *irregular*, as distinguished from *erroneous*, then the contention is well grounded.    "An irregular judgment is one which is rendered contrary to the course of law and the practice of the courts.    An erroneous judgment is one which, though regularly rendered, is contrary to law, and, therefore, liable to be reversed by an appellate tribunal."    1 Black on Judgments, sec. 170.    In 1 Tidd's Practice (p. 512), an *irregularity* is defined to be: "The want of adherence to some prescribed rule or mode of proceeding."

It seems to us that this judgment of July, 1892, wherein interpleader Elliott was, on his default, adjudged to have no interest in the fund attached, was not *irregularly* entered; but, if anything could be urged against it, it was because of an *error* that could only be reached in the usual manner of correcting the judg-

ments of inferior courts; that is, by the trial court during the term, or by appeal. The *proceedings* leading up to the rendition of the judgment were, unquestionably, in accordance with the "course of the law and practice of the courts;" there was no "want of adherence to any prescribed rule, or mode of proceeding." And that being so, the judgment was not *irregular*, in the proper use of that term, and the court, therefore, had no power after the term at which it was entered to set it aside on motion of the interpleader. The principle here alluded to will be found treated of in the following, among other cases that might be cited. *Hall v. Lane*, 123 Mo. 633, and authorities cited; *Jones v. Hart*, 60 Mo. 351; *Gray v. Bowles*, 74 Mo. 419; *Reilly v. Nicholson*, 45 Mo. 160; McQuillin's Pleading and Practice, sec. 889.

But, more than this, we are of the opinion that the judgment of July, 1892 (and which the court, nearly two years thereafter, set aside on the motion of interpleader), was neither irregular nor erroneous. It was a correct determination or sentence of the law, on a given state of facts. "Judgment is the conclusion of law, upon facts found or admitted by the parties, or upon their default in the course of the suit." 2 Tidd's Practice, 930. Or, as further defined: "A judgment is the final consideration and determination of a court of competent jurisdiction, upon the matters submitted to it." Note to page 1, 1 Black on Judgments.

The manifest purpose of our statute (section 5242, Revised Statutes, 1889), was to bring into court the alleged claimant of the property or funds attached in the hands of the garnishee, and have the conflicting claims thereto finally determined and settled in so far as concerns all the parties to that action. When the garnishee discloses in his answer that he has such funds, or property, once belonging to the defendant in the

action, but that they are claimed by another party, it is made the imperative duty of the court, by its order, to require the claimant to appear at a time designated, *"and sustain his claim to the property or debt."* And so was it done in this case. The garnishee bank disclosed the claim made by Elliott; plaintiff denied the alleged claimant had any interest; Elliott was summoned into court to sustain his claim; he appeared and asked and obtained time to prepare his interplea, but he then defaulted and declined to proceed. The court then, having jurisdiction of all the parties and of the subject-matter, proceeded to render its judgment, as it had the right to do. And what other judgment could have been entered except to bar Elliott, the defaulting inter-pleader, from making any claim to the property in controversy? He had failed to "sustain his claim to the property or debt," and by his failure to plead, after being brought into court, he, in effect, confessed that he had no interest therein. It was surely not the purpose of the statute to bring in an adverse claimant of the attached property, and then, because of his failure to assert any right thereto, turn the matter out of court and decline to adjudicate on the rights of the parties. The evident intent of the proceeding was to *force* a settlement of such conflicting claims, in advance of subjecting the property to whatever judgment the plaintiff might obtain against the defendant in the main case. And it was not intended that the alleged claimant could avoid this by coming into court and yet refusing to assert any right to the property. This would render nugatory the entire purpose of the statute. The statute was intended for the mutual benefit and protection of all parties—the plaintiff, garnishee, and claimant. And if the claimant, after being brought into the case and his appearance entered, as here, declines to assert his claim by interplea, then it is proper that judgment be entered

in such a manner as to protect the plaintiff and garnishee from any future assertion of right by said claimant. *McKittrick v. Clemens*, 52 Mo. 160–163. This was all that was done by the judgment of July, 1892, and it was not, therefore, erroneous.

There is no doubt that appeal lies from the final judgment on an interplea. The suggestion, then, of respondent's counsel to the contrary is without merit. Finkelburg's Mo. App. Pr., p. 49; Elliott's App. Proc., sec. 95; *Smith v. Steritt*, 24 Mo. 260.

The judgment of the circuit court will be reversed and cause remanded with directions to reinstate the judgment against the interpleader, respondent herein. All concur.