## Commonwealth Life Insurance Co. v. Combs et al.

(Decided Dec. 5, 1933.)

WOOTTON & WOOTON for appellant.

W. C. EVERSOLE and W. W. REEVES for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Reversing on original and affirming on cross-appeal.

On March 20, 1926, Talton Combs, and his wife, Gracie Combs, mortgaged certain real property in Hazard to the Commonwealth Life Insurance Company to secure an indebtedness of $7,000, represented by several notes. Thereafter Combs became indebted to the First National Bank of Hazard for approximately $6,700, the First State Bank of Vicco for $1,500, to the Perry County State Bank for $600, and to the Hazard Bank & Trust Company for $300. Billie Baker, French Evans, and D. Y. Wooten were sureties on the various bank notes. On October 25, 1926, Combs and wife executed to the sureties a second mortgage on the same property theretofore mortgaged to the Commonwealth Life Insurance Company to indemnify them against loss. Thereafter the sureties became insolvent, and Combs became delinquent in his payments to the insurance company and the bank. On August 10, 1927, the insurance company brought suit against Combs and wife, the sureties on the bank notes, and the three banks to enforce its mortgage lien on the property, alleging that the property could not be divided without materially impairing its value, that it would sell for more money as a whole, and that it would be beneficial for all parties concerned to have the property sold as a whole. Process was issued, and the return of the sheriff shows that it was served on Talton Combs and Gracie Combs, his wife, and others. The banks filed answers and cross-petitions, setting up the mortgage to the sureties, and asserting a lien on the property by way of subrogation. Process on the answers and cross-petitions was likewise served on Combs and wife. On September 27, 1927, Combs and wife filed what is called a special demurrer, which was overruled, and which will hereafter be con-

sidered. On December 16, 1927, the court adjudged the insurance company a first lien to secure the sum of $7,253.71, and second liens of equal dignity in favor of the four banks for $9,100, and ordered a sale of the property. The property was appraised at $15,000, and was sold on January 8, 1928, to the First National Bank of Hazard for $11,000. Two bonds were executed by the bank for $5,500 each, with Jesse Morgan as surety, payable in six and twelve months, respectively, after date. The sale was confirmed, and the master commissioner was directed to convey the property to the First National Bank of Hazard. In the meantime D. H. Goodlette had been appointed receiver of the property, and on April 24, 1929, Combs and wife filed a motion to discharge the receiver and to set aside the sale. The motion to set aside the sale was overruled, but the motion to discharge the receiver was sustained. At the September term, 1929, the commissioner conveyed the property to the First National Bank, and it was awarded a writ of possession.

On August 15, 1930, Combs and wife brought this suit against the Commonwealth Life Insurance Company and the different banks to set aside the judgment rendered in the previous action and all proceedings thereunder on the ground that Gracie Combs was not served with process; that they were entitled to a homestead in the property; that Gracie Combs had been forced by her husband to sign and execute the mortgage, was a married woman at the time; that the First National Bank was in liquidation at the time it filed its petition, and Combs and wife were in adverse possession of the property at the time it was sold by the commissioner. Joseph A. Gamble, who on March 18, 1930, was appointed receiver of the First National Bank of Hazard, intervened in the action and made certain claims which will hereafter be considered. The chancellor, after adjudging that Gracie Combs was not before the court, set aside the judgment and all proceedings thereunder, and allotted to Mrs. Combs a homestead in a portion of the property free of all liens and incumbrances. From that judgment the insurance company appeals, and the receiver has prosecuted a cross-appeal.

The first question to be determined is whether the trial court ruled correctly in holding that Gracie Combs

was not before the court in the original action. Unless in a direct proceeding against himself or his sureties, an officer's certificate, such as a return on a summons, cannot be called in question except upon an allegation of fraud on the part of the party benefited thereby, or mistake on the part of the officer. Section 3760, Kentucky Statutes; Tackett v. Mayo, 210 Ky. 299, 275 S. W. 866. Here there was no allegation of fraud or mistake, and parol evidence that Mrs. Combs was not served was inadmissible. Moore v. Commonwealth, 206 Ky. 779, 268 S. W. 563. It follows that the exceptions to the evidence, instead of being overruled, should have been sustained. Aside from this, Talton Combs and Gracie Combs, his wife, though claiming to enter his appearance for the sole purpose of filing the special demurrer, did file a special demurrer on the following grounds: (1) Because the court did not have jurisdiction to render the judgment at the present term of this court; (2) because the pleading states that the larger portion of the debt is not due, and the action is premature; (3) because it was an equitable action and other large lienholders had not been made parties, and defendants were not before the court upon the cross-petition filed against them or served with any process upon any cross-petitions at all. It is the rule in this jurisdiction that an appearance of the defendant in court for any purpose other than to object to the sufficiency of the service of the summons by a motion to quash or other appropriate proceedings is a general appearance to the action. Martin v. Cole, 191 Ky. 418, 230 S. W. 535; Johnson v. Holt's Adm'r, 235 Ky. 518, 31 S. W. (2d) 895. Here Combs and wife did not make a motion to quash the summons, or otherwise attack the service of process on her, but merely challenged the right of the court to render judgment at the term because the action was premature and other lienholders were not parties. In addition to this, they subsequently appeared in the action and made separate motions to set aside the sale and to discharge the receiver, and, though the court refused to set aside the sale, the motion to remove the receiver was sustained. In the circumstances, there can be no doubt that Gracie Combs was before the court in the original action, and such should have been the judgment of the court. As the court had jurisdiction of the subject-matter, and Mrs. Combs was before the court, it was her duty to present in that action all her de-

fenses, such as homestead, duress, disability as a married woman, and the like, and, not having done so, the judgment, which has never been set aside or reversed, is conclusive. Elswick v. Matney, 132 Ky. 294, 116 S. W. 718, 136 Am. St. Rep. 180; Jefferson, Noyes & Brown v. Western Nat. Bank, 144 Ky. 62, 138 S. W. 308; Wren v. Cooksey, 155. Ky. 620, 159 S. W. 1167.

The several contentions made by the receiver of the First National Bank will be considered in the following order:

(1) Even if the property should have been sold in separate tracts, and not as a whole, this did not render the judgment void. At most it was a mere error available only on appeal, and not in an independent action brought by the receiver for the purpose of having the sale set aside.

(2) The claim that the bank is not bound because the sale bonds were not found in the record is without merit. The record discloses that the bank made the purchase, and that two sale bonds for $5,500 each were executed by the bank with Jesse Morgan as surety, and there can be no doubt that, if the sale bonds have been lost or misplaced, they may be supplied by the court.

(3) The contention that the bank is not bound because the property was sold on six and twelve months' time, and the deed was made to the bank before the purchase money was paid, and under an arrangement by which the bank was to pay for the property at the rate of $50 a month, is equally without merit. The arrangement, which was mutually agreed to by appellant and the bank, was more advantageous to the bank than the terms on which the property was sold, and furnishes no ground for complaint on the part of the receiver.

(4) The purchase by the bank was not an ultra vires transaction, or invalid because it was made by the cashier without formal authority from the board of directors. Under the federal statute, 12 USCA sec. 29, a national bank may purchase real estate "such as shall be mortgaged to it in good faith by way of security for debts previously contracted." It is true that the mortgage under which the First National Bank of Hazard made the purchase was not executed directly to it, but was executed by Combs and wife to the sureties on

Combs' notes for the purpose of indemnifying them against loss; but it must not be overlooked that security given by a principal to his surety is security for the debt as well as for the protection of the surety, and operates eo instanti for the creditor's benefit, Alexander v. West, 241 Ky. 541, 44 S. W. (2d) 518; Arnett v. Salyersville Nat. Bank, 242 Ky. 216, 46 S. W. (2d) 124, and that the creditor may maintain a bill in his own name to enforce the application of the property to the payment of the debt, Bank of United States v. Stewart, 4 Dana, 27. In the circumstances, the legal effect of the mortgage executed to the sureties is the same as if it had been executed to the bank, and we doubt not that it falls within the purview of the federal statute. We are not inclined to the view that the directors had to authorize the cashier to make the purchase. Doubtless a different question would be presented if he had merely purchased real estate in which the bank had no interest, but that is not the case. Not only is it a fact that a cashier of a bank in this state is usually the principal managing officer, but in this case the cashier's act was approved and ratified by the president and vice president of the bank. Clearly the cashier had the right, when his bank was made a party, to employ attorneys to present its claim in the action. It was also his duty to see that the rights of the bank were protected. The property was appraised at $15,000, and the prior lien amounted only to $7,253.71. The greater portion of the excess over that sum would go to the bank, and would not have to be paid. We therefore conclude that it was within the scope of the cashier's authority to make the purchase on behalf of the bank.

As the sale to the bank was valid, it follows as a matter of course that the receiver is not entitled to recover from the insurance company the payments made by the bank on the purchase price.

Wherefore the judgment is reversed on the original appeal and affirmed on the cross-appeal, and cause remanded, with directions to dismiss the petition of Combs and wife, and the answer and cross-petition of the receiver, and for such other proceedings as may be necessary to restore the rights of appellant.