(April Term, 1937)

---

# BANK OF COMMERCE v. WILLIAMS

(No. 2016; June 8, 1937; 69 Pac. (2d) 525)

2

4

For the defendants and appellants, the cause was submitted on the brief of *John G. Hutton* and *H. Glenn Kinsley* of Sheridan.

For the plaintiff and respondent, the cause was submitted on the brief of *Lonabaugh & Lonabaugh* of Sheridan.

RINER, Justice.

The district court of Sheridan County by its order denied a motion made by the appellants Kate Williams individually and Kate Williams as executrix of the Estate of Ernest B. Williams, deceased, as defendants in that court, said motion being designated as one to "correct irregularities in obtaining judgment and orders." The judgment and orders thus attacked had been theretofore rendered in favor of the respondent Bank of Commerce, a corporation, as plaintiff below, in a suit to foreclose two real estate mortgages, each including different lands, but of the same date and securing the same indebtedness. By direct appeal the action of the district court in thus disposing of the motion above mentioned is upon the record made submitted here for review. The parties will usually hereinafter be referred to as "plaintiff" and "defendants" or by their respective names.

The facts are these: On February 17, 1917, the de-

fendant Kate Williams and her husband, Ernest B. Williams, executed and delivered to the plaintiff their joint and several note, payable to its order, for the sum of $20,000.00, due five years after date, with interest payable semi-annually, at the rate of seven per cent per annum. To secure this indebtedness, on the same day, the makers of the note also executed and delivered to the plaintiff the two mortgages already referred to, one of which described lands located in Sheridan County and the other lands situated in the adjoining county of Johnson. Both mortgages were duly filed for record in the several counties where the lands lay.

Ernest B. Williams died in Sheridan County in the spring of the year 1920, leaving a last will and testament, wherein his wife was named as sole legatee and devisee and also as executrix of his estate,. At that time there had been paid on sundry occasions, according to the endorsement of the note, interest on the indebtedness totaling $3515.77. On or about the 8th day of April, 1920, Kate Williams, the widow, was appointed executrix of her husband's estate by the district court of Sheridan County, and has not since been discharged. Since that date there was. paid at different times, commencing on the date last mentioned, according to the note's endorsements, the sum of $15,228.74 on account of interest due thereon. Nothing was ever paid on the principal sum and the last interest payment was made in the fall of the year 1930.

On July 23, 1935, principal and interest being in default, plaintiff filed in the district court aforesaid its petition against the said defendants for judgment on the note described above and for a decree foreclosing the several mortgages. After pleading the facts concerning the note and mortgages, the death of Williams, the character of his last will and the appointment of his widow as executrix, as already related, the pleading alleged: "That the plaintiff on or about the 21st day

of April, 1920, duly presented its claim to said executrix and filed the same in said court against said estate, which said claim was duly approved by said executrix on or about the 25th day of June, 1920." These allegations were followed by the usual averments of failure on the part of the defendants to pay the principal and interest due, a statement of the several amounts claimed on account thereof and prayer for judgment and foreclosure of the mortgages.

A summons was duly issued on this petition, and on July 23, 1935, was personally served on each of the defendants warning them that unless they answered the petition "on or before the 24th day of August, 1935, said petition, with all matters and allegations therein contained, will be taken as true, and judgment rendered accordingly." The defendants made no appearance whatsoever in response to the summons thus served.

On August 26, 1935, the district court entered a default decree against the defendants and on the following day an amended decree. In this amended decree of date August 27, 1935, it is recited that upon the plaintiff's pleading, the evidence of the plaintiff submitted in support thereof and the files in the cause, the court found that "due and legal service" had been made on each of the defendants and that they were in default for answer or other pleading. It is then recited also that after being called in open court and answering not, their default was ordered to be and was entered. The court among other things upon the evidence introduced also found the facts relative to the execution and delivery of the note above detailed; that the note was unpaid and past due and that there was due from the defendants to said plaintiff the principal sum of $20,000.00, $8,265.20 interest thereon, and a reasonable attorney's fee of $150.00; that to secure the payment of said note Ernest B. Williams and the defendant Kate Williams executed and delivered to plaintiff the

mortgages aforesaid, which were duly recorded as stated above. The facts alleged by plaintiff's petition and already detailed were likewise found by the court relative to the death of Williams, the character of his last will and the qualification of his wife as executrix, and that "said plaintiff, on or about April 21st, 1920, duly presented its claim to said executrix for allowance against said estate, and filed the same in said court, which said claim was duly approved by said executrix on or about June 25th, 1920."

The court accordingly adjudged and decreed that the plaintiff have judgment against said defendants for the aforesaid several amounts found to be due, with costs; that "the mortgages hereinbefore described be and the same are hereby ordered to be, and are hereby foreclosed, and the premises therein described are hereby ordered to be sold as one tract by the Sheriff of Sheridan County, Wyoming, as upon execution, after giving notice as required by law, in the Sheridan Press, a newspaper of general circulation printed and published in the County of Sheridan, State of Wyoming; that no publication of said sale shall be made in Johnson County, Wyoming, and that the proceeds of said sale be paid and applied on the amount due to said plaintiff"; that the defendants and others claiming through or under them be forever barred and foreclosed of all title, claim and equity of redemption in and to the mortgaged lands; that plaintiff might become the purchaser at the sale thus ordered, and that the sheriff should issue a certificate of sale to the purchaser, and that after the legal redemption period elapsed, he was directed to execute to the purchaser a sheriff's deed to the property sold.

Thereafter the sheriff, pursuant to the court's order of sale, after advertisement as thus directed in the amended decree, aforesaid, sold all the mortgaged property at the front door of the Sheridan County Court

House in the City of Sheridan, Wyoming, on October 12, 1935, at public auction, to the plaintiff, for the sum of $28,616.00, and issued a certificate of sale to it, stating that it would be entitled to a deed to said property in nine months from date of sale, unless within that time redemption was had as provided by law. He in due course made and filed his return of his acts under said order.

October 15, 1935, plaintiff filed its motion for the confirmation of this mortgage sale, and it was on that date confirmed by the district court of Sheridan County. No objections of any kind were interposed at this time and no exceptions taken by any one to this action of the court. The order of confirmation directed that the sheriff issue a deed to the plaintiff in case the premises were not redeemed, as the amended decree had directed. No deficiency judgment was asked by plaintiff at this time or given by the court against the defendants or either of them, nor could it have been had, as the sale was, it will be noticed, apparently for the full amount of plaintiff's claim and costs.

Nothing more was done in the matter until the summer of the year following. Meanwhile the June, 1935, term of the district court of Sheridan County, which began on the second Monday of that month, had come to an end, as had also the December, 1935, term of that court, which commenced on the second Monday of the month last mentioned, two terms of court being held in Sheridan County pursuant to the state law.

On June 29, 1936, a few days before the sheriff was required by the amended decree and the order of confirmation to issue his deed to the plaintiff, the defendants joined in and filed the motion first above mentioned, which was duly entitled in the foreclosure action, whereon the court made the ruling complained of now.

Summarized that motion sought an order of the court

to correct the amended decree aforesaid by vacating it and all subsequent proceedings thereon and thereafter on account of certain alleged irregularities "in obtaining judgment and orders" in the cause detrimental to defendants' rights, these being stated to be:

1. That said amended decree erroneously ordered the premises described in the mortgages sued on by the plaintiff to be sold as one tract, whereas said premises consist of many legal subdivisions grouped in four separate and distinct bodies of land; that said order in this respect conflicts with the requirements of Sections 89-2209, 89-2210 and also 71-211, W. R. S. 1931.

2. That said amended decree is irregular in that plaintiff wholly failed to comply with the requirements of Section 88-3109, W. R. S. 1931.

3. That the decree aforesaid is irregular in that it appears by plaintiff's petition, in conjunction with the records and files of the court in the matter of the estate of Ernest B. Williams, deceased, that plaintiff filed within the statutory time its claim as a common claim in said estate, upon the note aforesaid, without asserting any security whatever in connection with said claim, and said claim was allowed by the executrix of that estate as filed; that plaintiff received from the general assets of said estate $15,228.74 between April 10, 1920, and November 10, 1930, and credited the same on said note; and that the actions of the plaintiff in doing these things constituted a complete waiver by it of the said mortgage security and of all rights to foreclose said mortgages, or either of them.

4. That plaintiff's petition did not state facts sufficient to constitute a cause of action.

On July 23, 1936, counsel for defendants noticed this motion for hearing. The next day plaintiff filed a special appearance and objection to the jurisdiction of the court to hear said motion, alleging among many grounds that it was not one to correct irregularities,

but in fact a motion for a new trial and to vacate the judgment previously rendered; that two terms of court had elapsed since the entry of said judgment upon the default of the defendants after personal service of process on them; that said motion made no showing of a meritorious defense to the cause of action set forth in plaintiff's petition; and that the alleged irregularities are not irregularities in obtaining the judgment and orders, but are asserted "errors of law occurring in the judgment itself, all of which were known to said defendants, or could have been known, immediately after its rendition."

August 14, 1936, a written request was made by counsel for the defendants that the court "state in writing the conclusions of fact found separately from the conclusions of law," pursuant to verbal request made following argument on their motion. Three days later and on August 17th, they also filed an extended affidavit in support of their motion aforesaid, signed and verified by counsel. This affidavit undertook to set forth facts which disputed some of the allegations of plaintiff's petition and the findings and judgment of the court subsequently made thereon and on the evidence submitted by plaintiff; it undertook also to suggest certain questions of law upon the facts thus stated and to submit as a meritorious defense to plaintiff's cause of action the matters set out in defendants' motion aforesaid and the legal issues raised thereby.

The court did not comply with the request of defendants for separate findings of fact and law, but on August 17, 1936, entered its order overruling plaintiff's objection to the jurisdiction of the court to hear said motion; it found that "the alleged irregularities set forth in said motion are not and were not irregularities in obtaining said judgment" and denied and overruled defendants' motion. To this action of the court defendants were granted their exception. The

ruling thus made is the one in controversy here, as heretofore mentioned.

The plaintiff has filed in this court a motion to dismiss the appeal, which, after detailing the grounds of defendants' motion aforesaid and setting forth other facts shown by the record and stated above, alleges that this court has no jurisdiction at this time to correct the alleged irregularities in obtaining said judgment, as they are not so, but, if anything, are "errors of law in the said judgment." The question thus attempted to be raised obviously involves the merits of this appeal, and for that reason the motion to dismiss must be denied. Hitshew v. Dern, 35 Wyo. 183, 247 Pac. 305; Enos et al. v. Keating, 36 Wyo. 318, 255 Pac. 1; Security-First National Bank of Los Angeles v. King, 45 Wyo. 93, 15 Pac. (2d) 1112. Ordinarily on a motion to dismiss an appeal the only questions to be considered are: Is the judgment or the order appealable? Has the appellant the right to appeal and was the appeal taken pursuant to law and the rules of this court? In re Davis, 27 Mont. 235, 70 Pac. 721; Smith v. Clyne, 15 Idaho 254, 97 Pac. 40.

Section 89-2301, W. R. S. 1931, so far as material here, provides.

"A district court may vacate or modify its own judgment or order, after the term at which the same was made: * * *

"3. For * * * irregularity in obtaining a judgment or order."

Section 89-2304, W. R. S. 1931, in that part now pertinent directs that:

"The proceedings to correct * * * irregularity in obtaining a judgment or order, shall be by motion, upon reasonable notice to the adverse party, or his attorney in the action; but the motion to vacate a judgment because of its rendition before the action regularly stood for trial, can be made only in the first three days of the succeeding term."

Section 89-2307, W. R. S. 1931, as it affects the matter in hand, reads:

"A judgment shall not be vacated on motion or petition until it is adjudged that there is a valid defense to the action in which the judgment was rendered. * * *"

Section 89-2306, W. R. S. 1931, reads:

"The court must first try and decide upon the grounds to vacate or modify a judgment or order before trying or deciding upon the validity of the defense or cause of action."

Section 89-2310, W. R. S. 1931, permits proceedings of this character to be commenced "within three years * * * after the defendant has notice of the judgment." It is upon these statutory provisions that the defendants rest their proceedings in the district court.

In Mitter v. Black Diamond Coal Company, 28 Wyo. 439, 206 Pac. 152, a motion designated as a motion for a new trial, which sought the right to present a defense to the action, but which was filed after the term in which the judgment it also asked to have vacated was entered, was considered as a motion to vacate after the term for irregularities under Section 5923, Compiled Statutes of Wyoming, 1920, sub-division 3 (identical with W. R. S., 1931, § 89-2301 above quoted), and it was held that it presented no grounds for relief. In disposing of the matter, this court, among other things, said:

"For instance, it appears that, on denying the motion for leave to answer and defend, the court found that defendant had not acted diligently in applying to the court for relief, and had not shown that it had a meritorious defense to the action. If those findings were wrong, and, for that or any other reason, the court, in denying the motion, abused its discretion, its action was erroneous, and might have been reviewed and corrected here on appeal or error from the final judgment which followed. But such erroneous action, or abuse

of discretion, involving a decision upon questions of fact, would not constitute an irregularity as contemplated by subdivision three of Section 5923. An irregularity is a want of adherence to some prescribed rule or mode of proceeding, either in omitting to do something necessary to the orderly conduct of the suit, or in doing it at an unseasonable time or in an improper manner. (1 Tidd's Pr. 512.) Irregularities do not result from wrong adjudications, and in that respect are to be distinguished from errors. Everett v. Henderson, 146 Mass. 89, 14 N. E. 932, 4 Am. St. Rep. 284; Orvis. v. Elliott, 65 Mo. App. 96; 1 Black on Judgments, § 170. As no appeal was perfected from the judgment, we must hold that we cannot pass upon the propriety of the action of the court in denying defendant's last mentioned motion."

In accord with the views thus expressed in the Mitter case is the decision of the Supreme Court of Kansas involving identical statutory phraseology in Lewis v. Woodrum, 76 Kan. 384, 92 Pac. 306. There the probate court had entered an order of distribution adverse to Susan Woodrum after finding that she had received actual notice of the hearing, which resulted in the order. She took no appeal from this adverse decision. Several years afterwards she filed a motion to set aside this order of distribution, claiming she had no notice of the hearing. The probate court denied the motion. From this ruling she took an appeal to the district court, which reversed the action of the probate court. Declaring the district court's ruling could not be upheld the court of final authority relative to the Kansas law said:

"After the judgment had become final, she asked that court to open up its judgment, retry the question of her right to a share of the estate, and determine that she was entitled to a one-fourth interest. The application was based on the last clause of the third ground of section 768 of the Civil Code (Gen. St. 1905, § 5503), authorizing the district court, or courts of record, to modify and correct their own judgments. The specific ground is 'irregularity in obtaining a judgment or

order.' The application was denied, and Woodrum sought by an appeal from a denial of the motion to have a retrial not only of that motion, but also of the questions settled by the final judgment, from which no appeal had been taken, and this after the time for an appeal had expired. In that way she would extend the time for taking an appeal and practically destroy the limitation imposed by statute upon appeal. Assuming, however, that the probate court could then modify its judgment, the relief sought could not be granted on the application which was made. That of which she complained was not an irregularity in obtaining the judgment, but it was an error of law in rendering the judgment. No irregularities were charged against the parties, the court, or its officers; but, according to her theory, a wrong decision upon the facts presented was made by the court. After the term of court expired and its judgment had become final, it could not be opened or modified, except for the causes, and in the manner prescribed by statute.

"The relief she asked did not come within the statutory ground assigned in her motion and was rightly refused by the probate court."

To the same effect is McLeod v. Hartman, 123 Kan. 110, 253 Pac. 1094.

And in Commissioners of Guernsey County v. Village of Cambridge, 7 Ohio Circuit Court 72, discussing the language of the Ohio statute from which our Section 89-2301, supra, was taken, and particularly subdivision 3 thereof, the nature of an irregularity in obtaining a judgment is defined thus:

"An irregularity, within the intent of the statute, is some act done, or step taken, by the court, either sua sponte, or upon request, or by an officer thereof, which is not according to the regular course of proceeding, and by which a party was deprived of the benefit of a defense, without fault on his part.

"The object and intent of the enactment was to enable a party to make defense after judgment, where he thus had been deprived of the opportunity of making it before judgment, without fault on his part. Bank v. Doty, 9 Ohio St., 505, 510.

18

"It is therefore necessary that the irregularity be such as deprived the party of the benefit of making his defense before judgment, and such deprivation is, therefore, an essential part of a definition of such statutory irregularity.

"The party must have had a good defense, as it could not be said that he had been deprived of making a defense when he had no valid defense to make. So it must appear that he did not participate in the act complained of, or know that it was to be done in time to resist it, as it could not be said that he had been prevented from making defense by an act which he assisted in doing, or as to which he had prior knowledge. It must be such an irregularity as has not been superinduced by the fault or negligence of the party himself. McKee v. Bank, 7 Ohio, 188; Huntington v. Finch, 3 Ohio St. 445."

It will be especially noted that the power of the court to set aside a judgment after the term, under sub-division 3 of Section 89-2301, supra, is not for an irregularity in the judgment, but for an irregularity in *obtaining it*. We think it may be gleaned from the foregoing statements of the law that a wrong decision by the district court on questions of fact, which it had power to hear and determine, would not be such an irregularity as would properly fall within the purview of the last clause in sub-division 3 of Section 89-2301, supra. It would seem true also that an act would not be an irregularity in obtaining a judgment if it were done with the knowledge of the moving party or induced by his fault or negligence. Of course acts wholly in excess of the court's jurisdiction, it is needless to say, are subject to attack in any way and at any time the aggrieved party may see fit by proper proceedings. It is equally plain that to enable a motion of the character employed by the defendants in this litigation to be successful, the court must be satisfied that a meritorious defense to the action exists in favor of the moving party or parties.

Turning to the particular matters urged by defend-

ants' motion as irregularities in obtaining the foreclosure judgment, we may properly consider sub-division "2," "3" and "4" thereof together, as they deal with the same subject, viz., the presentation of plaintiff's claim to the executrix of the Ernest B. Williams Estate and the consequences flowing from what was or was not done in that regard. The contention is made for the defendants through these paragraphs of their motion that the plaintiff failed to comply with the provisions of Section 88-3109, W. R. S. 1931, which reads:

"No holder of any claim against an estate shall maintain any action thereon unless the claim is first presented to the executor or administrator, except in the following case: An action may be brought by any holder of a mortgage or lien to enforce the same against the property of the estate subject thereto, where all recourse against the property of the estate is expressly waived in the complaint."

In conjunction with this statute the defendants refer also to Section 88-3106, W. R. S. 1931, which in part provides.

"If the claim or any part thereof be secured by a mortgage or other lien which has been recorded in the office of the recorder of the county in which the land affected by it lies, it shall be sufficient to describe the mortgage or lien, and refer to the date, volume and page of its record."

It is said that the affidavit of counsel filed in support of the motion shows that the claims of plaintiff presented to the executrix was but a common claim upon the note and not a claim secured by mortgage; that the statutory method of describing the two mortgages as security was not followed in the presentation of the claim to the executrix, as directed by Section 88-3106, W. R. S., supra, that they were never presented to her as a claim, and hence, on these grounds it is urged that the plaintiff waived its right to foreclose the mortgages.

But it seems to us logically undisputable that questions involving the manner in which the plaintiff's claim was presented to the executrix of the Ernest B. Williams Estate, and, indeed, whether its claim was presented to her as a common claim, a secured claim or at all, are merely questions of fact which the court was authorized to decide and did decide, upon evidence received after the default of the defendants had been entered and after their failure to appear, notwithstanding they were personally served with process. The court found, as we have seen, that plaintiff "duly presented its claim to said executrix" and ordered the foreclosure of the two mortgages. It had the power to so find, just as the probate court in the Kansas case, supra, had the power to find that due notice of the hearing had been given Susan Woodrum. Plaintiff's "claim" may fairly be held to include not only the note aforesaid, but the mortgages securing it.

In 11a Cal. Jurisp., Section 495, page 698, with reference to statutes similar to our Sections 88-3106 and 88-3109, supra, the text says upon the authority of a number of decisions in that state:

"The meaning of the word 'claim' is broad enough to embrace a mortgage or any other lien, as distinct from the note secured by it, both of which are mentioned as written instruments on which a claim may be founded. The mortgagee has two distinct claims—the note and the mortgage—each of them having its origin in contract, both of them within the scope of the word 'claim'."

Even if it be assumed that the court erroneously found the facts in regard to the presentation of this claim to the personal representative of Ernest B. Williams, deceased, that would not have been an irregularity in obtaining the judgment within the meaning ascribed by the decisions above cited to the third subdivision of Section 89-2301, supra. If proper exceptions had been taken at the time, the finding and decree

thereon could, of course, have been made a subject of attack and possible reversal on appeal or error, but defendants did not see fit to employ such a remedy. The defendants could not by the motion they filed and their affidavit in support of it, overthrow the court's finding of fact when it had jurisdiction both of the parties and the subject-matter of the action. They had their day in court and did not attend.

In passing it may be observed also that in Moran v. Gardemeyer, 82 Calif. 96, 23 Pac. 6, it was held that under the California Civil Code, Section 1497, providing for the filing and allowance of claims against the estates of decedents, and Section 1500 of that Code, with language like Section 88-3109, W. R. S. 1931, supra, the presentation to and allowance by the personal representatives of a deceased mortgagor of a claim founded upon the note which the mortgage secured did not bar the right to proceed on such mortgage by foreclosure suit. Citing a number of California decisions, the court remarked that this was no longer an open question in that state.

It is said that the plaintiff received from the general assets of the Ernest B. Williams Estate the sum of $15,228.74 and credited this amount on the note, and that this constituted a waiver by the plaintiff of the security it held through the two mortgages. But this contention is based upon the premises that the claim was not properly presented as a secured claim. We have seen that the court's finding upon the evidence before it was broad enough to enable us to conclude otherwise. What the evidence was which was submitted to the court by the plaintiff we cannot know, as it is not here. It may have fully justified the court's finding or it may not have. The outstanding fact is the court so found. True, counsel's affidavit disputes the fact, but, as already intimated, that affidavit cannot in this fashion impeach a finding made by the court,

possessed of complete jurisdiction of all the parties and the subject-matter in controversy, and unreversed on appeal or error.

The note aforesaid discloses that the amount paid as stated above was paid as interest thereon. Who paid it, whether Kate Williams or Kate Williams as executrix, does not appear, except through counsel's affidavit, which states that the sums came from the estate. Section 88-3121, W. R. S. 1931, provides:

"If there be any debt of the decedent bearing interest, whether presented or not, the executor or administrator may, by order of the court, pay the amount then accumulated and unpaid, or any part thereof, at any time when there are sufficient funds properly applicable thereto, whether said claim be then due or not, and interest shall thereupon cease to accrue upon the amount so paid. This section shall not apply to debts not due unless the creditor consent to accept the amount."

Assuming, however, that the sums were paid by the executrix and not by her personally, in the absence of evidence to the contrary in this regard, we must assume also that the payments of interest were made voluntarily by the executrix and with the approval of the probate court of Sheridan County. Omnia rite acta esse praesumuntur. We have been cited to no decisions which hold that the acceptance of interest paid under such a statute constitutes a waiver of the security held by the creditor to protect the debt. See In re Jennings' Estate, 74 Mont. 449, 241 Pac. 648, 653.

Finally, it may be noted that although the district court gave a judgment against each of the defendants in personal form, yet the property was sold for an amount sufficient to completely liquidate plaintiff's entire claim. No deficiency judgment was sought in the order of confirmation of sale, and, as has already been intimated, it could not have been properly given. That being so, the case cannot very practically be distin-

guished from a foreclosure where all recourse against an estate is waived. The points urged by sub-divisions 2, 3 and 4 of defendants' motion cannot be considered as well taken.

It is next contended that the district court had no jurisdiction to decree a foreclosure in an action brought in Sheridan County of a mortgage on lands situated in Johnson County and which were located apart from the lands in Sheridan County embraced in the same proceeding, although both mortgages admittedly were given to secure the same debt. Section 89-701, W. R. S. 1931, so far as applicable here, reads:

"Actions for the following causes must be brought in the county in which the subject of the action is situate, except as provided in the next two sections: * * *

"For the sale of real property under a mortgage, lien or other incumbrance or charge."

The following Section 89-702, W. R. S. 1931, is to this effect:

"When the property is situated in more than one county, the action may be brought in either; but in actions to recover real property this can only be done when the property is an entire tract."

We cannot adopt the view urged. We think the language of these two sections last quoted authorizes this action to be brought in Sheridan County, where personal service could be had on both defendants. In Wheeler & Wilson Mfg. Co. v. Howard, 28 Fed. 741, Judge Brewer, then Circuit Judge, said:

"It is elementary that where two instruments are executed at the same time, having reference to the same transaction, they are to be construed as though there was but one instrument. Now, here, according to the averments of this petition, this mortgage and this deed of trust were executed at the same time, and to secure these notes; they were parts and parcels of one transaction, and are to be construed as one instrument."

Where separate mortgages were given to secure the same indebtedness on lands situated in two counties, and it was urged a single suit in one county for the foreclosure of both mortgages could not be maintained, in Benn v. Trobert, 76 Okla. 184, 184 Pac. 595, the court said:

"We think the plaintiff had the right under the law to bring his action for a foreclosure of these mortgages in either Seminole or Pottawatomie county, as provided in Revised Laws of 1910, § 4672, which, in so far as the same is applicable, is as follows:

" 'If real property, the subject of an action, be an entire tract, and situated in two or more counties, or if it consists of separate tracts, situated in two or more counties, the action may be brought in any county in which any tract, or part thereof, is situated. * * *'

"The same is the rule as announced by Jones on Mortgages, § 352, as follows:

" 'Where several mortgages are made to different parcels of land to secure one and the same debt, they constitute one mortgage, and their unity is determined by the debt secured, and an action may be maintained in any county in which any part of the land is situated which is secured by any one of the several mortgages.'

"This rule is announced in the cases of Commercial National Bank v. Johnson, 16 Wash. 536, 48 Pac. 267; Lomax v. Smyth, 50 Iowa 223, and Stevens v. Ferry et al, (C. C.) 48 Fed. 7."

The view we adopt relative to this question certainly makes for the reduction of litigation and expense, does not do violence to the statutory language so far as we can see, and no good reasons have been submitted why the statute should be construed otherwise. This view is also inferentially supported by the provisions of our law relative to sale of property under mortgage, where such property is located in several counties and the mortgage is foreclosed by court procedure, and presently to be mentioned.

We now take up the first ground of the motion urged by the defendants, viz., that it was an irregularity in

obtaining the amended decree in question because thereby it was ordered that the premises described in the two mortgages should be sold as one tract. Our attention is directed to the provisions of Section 71-211, W. R. S. 1931, which governs the procedure in the sale of mortgaged real property on advertisement in the exercise of a power of sale contained in the instrument. This section requires distinct tracts of land to be sold separately. It does not deal with proceedings in court where confirmation of the sale must be had, and the parties are afforded full opportunity to object to the manner in which the sale was conducted. It has no application to a proceeding of the character now before us.

Sections 89-2209 and 89-2210, W. R. S. 1931, however, specifically deal with the sale of real property under mortgage foreclosure in the district court.

So far as we are now interested in the section first mentioned its language is:

"When a mortgage is foreclosed, a sale of the premises shall be ordered. * * * When the premises to be sold are in one or more tracts, the court may direct the officer who makes the sale to subdivide, and sell the same in parcels, or to sell any one of the tracts as a whole."

Section 89-2210 is verbatim:

"When the mortgaged property is situated in more than one county, the court may order the sheriff or master, or other officer, of each to make sale of the property in his county, or may direct one officer to sell the whole; the court may direct that the property, when it consists of a tract, be sold as one tract, or in single parcels, and shall direct whether publication of the sale shall be made in all the counties, or in one county only."

It is argued on behalf of the defendants that under these statutes the court was utterly without power to direct that the sale of the property be made as one

tract when part of the land was in Sheridan County and part of it was in Johnson County, some distance away. We are not inclined to think that these sections are mostly otherwise than directory in character. It will be seen that the statutes repeatedly employ the word "may" and the word "shall" only with reference to whether publication of the notice of sale shall be made in all the counties or in one alone. If the defendants' contention should be upheld, then it would follow that although it would be highly to the advantage of the mortgagors to have all the property sold as one tract, it could not be done, and if the court so ordered its action would be void.

In 3 Jones on Mortgages, 8th Ed., Section 2082, page 549, the author says: "The fact that several parcels mortgaged together had previously been held, used, and conveyed together as one farm, is a sufficient reason for selling the whole in one parcel."

In the case of Provine v. Thornton, 92 Miss. 395, 46 So. 950, the constitution of the state required that all lands comprising a single tract sold pursuant to court decree or on execution, should be first offered in sub-divisions, not exceeding 160 acres, and then offered as an entirety and the price bid for the latter should control only when it exceeded the aggregate of the bids for the land in sub-divisions. Section 2443 of the Code of 1892 provided that all land comprising a single tract and described wholly as sub-divisions of the governmental surveys, sold under mortgages and trust deeds, should be sold as provided in the constitution. It appeared in the case that the land sold under a trust deed had been held for many years as a home place, all as part of one plantation, and though eighty acres of it were about half a mile distant from the balance, but connected with it by a public road, it was yet held that the lands as a whole comprised only a single tract

and should have been sold as if they lay contiguously, and the court said:

"We are satisfied that, within the purview of the law, the fact that 80 acres of the property were separated from the main body of the land in the conveyance did not make that 80 acres a separate tract. Pierce v. Reed, 3 Neb. (Unof.) 874, 93 N. W. 154; 27 Cyc. p. 480. The text of this latter is as follows: 'On the other hand, although the premises may be susceptible of division or actually divided, yet if they are used, occupied, or naturally constitute one farm, or one lot, the property should be offered as a whole.'"

Counsel for defendants argue: "If there had been one mortgage here and if the lands in Johnson County had been contiguous to the lands in Sheridan County, the court might have properly ordered a sale of contiguous lands as a whole." We have seen that there is in effect but one mortgage involved here, and whether the lands should be treated as contiguous within the principle of the above cited decision in the Provine case and sold as such, was obviously a question of fact which the court had authority to decide, as was done. This makes it reasonably clear, we think, that the action of the court in directing a sale of the property as one tract was not an "irregularity in obtaining the judgment," as urged by defendants. At most it was an error in the judgment only subject to review on appeal or on error, if those methods had been followed.

In Commonwealth Life Insurance Co. v. Combs, 251 Ky. 540, 65 S. W. (2d) 696, the court, discussing a mortgage foreclosure judgment which directed the sale of the property as a whole instead of in separate tracts, said:

"The several contentions made by the receiver of the First National Bank will be considered in the following order:

"(1) Even if the property should have been sold in separate tracts, and not as a whole, this did not render the judgment void. At most it was a mere error avail-

able only on appeal, and not in an independent action brought by the receiver for the purpose of having the sale set aside."

There is nothing submitted by the record before us to indicate that the defendants were at all prejudiced by the decree on the particular point we are now considering. They urge that they might have redeemed a part of the land if it had been sold in parcels, that prospective purchasers might have bid on one of these parcels if it had been so offered for sale, but this falls far short of showing that these possibilities were facts. It may very well be also that the district court upon proper evidence before it concluded that if the lands had not been directed to be sold as an entirety, but piecemeal, an entirely inadequate sum would have been realized from the sale. It is common knowledge that separate and disconnected pieces of ranch lands used in one common enterprise may be extremely valuable, while if the ownership was split up or they were attempted to be used separately, the lands would be of little value.

If the defendants had taken the trouble to have been present and objected and excepted to the amended decree, and if they had brought their complaints to the attention of the district court on plaintiff's application for confirmation of the sale, for which course of procedure they had ample opportunity afforded them, they would occupy a far different situation than they do now. It was through their own neglect that a request, such as they now make, relative to the sale of these lands, was not proffered to the court at the proper time. We can only conclude that the district court ruled correctly in holding that its direction to sell these mortgaged lands as an entirety was not an irregularity in obtaining the judgment.

Something is said concerning the trial court's failure to make separate findings of fact and conclusions of

law. There is no merit in this point. Cottonwood Sheep Co. v. Murphy, 48 Wyo. 250, 44 Pac. (2d) 1000, and authorities there cited.

The order of the district court of Sheridan County complained of being correct, as we view the record, it will be affirmed.

*Affirmed.*

BLUME, Ch. J., and KIMBALL, J., concur.