Elizabeth S. EMERY, Appellant
(Plaintiff below),

v.

Charles W. EMERY, Appellee
(Defendant below).

No. 3395.

Supreme Court of Wyoming.

Aug. 9, 1965.

Carl L. Lathrop, of Lathrop, Lathrop, & Tilker, Cheyenne, for appellant.

William R. Buge, of Ross & Buge, Cheyenne, for appellee.

Before PARKER, C. J., and HARNSBERGER, GRAY, and McINTYRE, JJ.

Mr. Justice McINTYRE delivered the opinion of the court.

Elizabeth S. Emery brought an action in district court to vacate a decree of divorce granted to Charles W. Emery 22 months previously. From a judgment denying vacation Mrs. Emery has appealed.

One of the grounds assigned for vacating the decree is that proper service by publication was not obtained on Mrs. Emery as the defendant in the divorce action, and that the court thereby lacked jurisdiction to enter the decree.

Although counsel bases appellant's attack on the service in a claim that the husband .

was guilty of fraud in connection with his attempted service by publication, we need not adjudge him guilty of fraudulent intentions since the record shows a total lack of service—whether intentional or not—and the court therefore had no jurisdiction to grant the decree of divorce.

Rule 4(f), W.R.C.P., requires, "Before service by publication can be made," an affidavit must be filed stating, among other things, (1) defendant's address, if known, or (2) that defendant's address is unknown *and* cannot with reasonable diligence be ascertained. One of these alternatives is essential before service by publication can be made.

The affidavit for service which was made and filed by Charles Emery *did not state* that defendant's address was unknown; neither did it state that such address cannot with reasonable diligence be ascertained. Moreover, the affidavit did not state what defendant's address is. It merely stated the last known address of defendant was 4610 Wisconsin Avenue, Chevy Chase, Maryland. This falls short of stating a present known address.

The record discloses that when a copy of the published notice was mailed to defendant-wife at 4610 Wisconsin Avenue, Chevy Chase, Maryland, it was returned by the post office marked "NO SUCH STREET NUMBER." This necessarily means the place given as an address was nonexistent, and affiant had not stated defendant's address, as the law requires.

The last paragraph of Rule 4(f) provides, in all cases in which defendant is served by publication of notice and there has been no delivery of the notice mailed by the clerk, the plaintiff or his agent or attorney, at the time of the hearing and prior to entry of judgment, shall make an affidavit stating: (1) the address of the defendant as then known to him; or (2) if unknown, that he has been unable to ascertain the same with the exercise of reasonable diligence.

The only purported compliance with the requirement for a second affidavit, in the instant case, was the filing of an instrument signed by Vincent A. Ross as attorney for plaintiff. It recites in part:

"Comes now plaintiff above named by and through his attorney Vincent Ross, and states that he has been unable to assertain [sic] the correct address of the defendant above named that with the excerise [sic] with or reasonable diligence. * * *"

Not only is the foregoing language so ambiguous and unintelligible as to be a nullity, but it indicates that the attorney is saying for plaintiff that "he" (the plaintiff) has been unable to ascertain the correct address of the defendant. That is not what the rule requires. It requires an affidavit stating the address of defendant as then known to *affiant,* or if unknown, that *affiant* has been unable to ascertain the same with the exercise of reasonable diligence.

The purported second affidavit still stated the last known address of defendant is 4610 Wisconsin Avenue, Chevy Chase, Maryland. However, following this statement was a recital that notice mailed to such address was returned with "no such address." Under this situation, the instrument could not possibly be construed as stating the address of defendant as "then known" to anybody. Also, as we have already pointed out, it cannot be construed as stating that the person making the affidavit has been unable to ascertain the address of defendant with the exercise of reasonable diligence.

The instrument filed as a second affidavit of service was not signed by plaintiff. At the end thereof is a blank line with the name "Charles W. Emery, Plaintiff" typed beneath. The signing was "By" Vincent A. Ross, Attorney for Plaintiff.

In State ex rel. State Board of Charities & Reform v. Bower, Wyo., 362 P.2d 814, 820, rehearing denied 363 P.2d 791, we said an affidavit which indicated that Wyoming State Hospital was being sworn was meaningless, because the affidavit was not made on the oath of anyone. Although the instrument in that case was signed before a

notary public by an officer of the hospital, we further said there was at least some doubt if the officer whose signature was affixed could be successfully prosecuted for perjury if a false swearing were charged.

The same is even more true in the case at bar. Plaintiff did not make the affidavit in question, and he could not be prosecuted for false swearing. The attorney does not purport to swear for himself but only for his client. For any person to make an oath by proxy—"by and through his attorney"—is just as meaningless as it is for the Wyoming State Hospital to be sworn. See Park County ex rel. Park County Welfare Department v. Blackburn, Wyo., 394 P.2d 793, 795–796.

■ We recognize that the affidavit required under the last paragraph of Rule 4(f) can be made by plaintiff, or it can be made by his attorney. It cannot, however, be made by one for the other. Such an affidavit at best could only be made on information and belief, and we construe the rule to require positive verification.

■ Thus, the court lacked jurisdiction over Mrs. Emery when the divorce decree was entered for these reasons:

1. Because the affidavit made by plaintiff himself did not state defendant's address, which necessarily means correct address; neither did it state as an alternative that defendant's address was unknown and cannot with reasonable diligence be ascertained; and

2. Because the attorney's affidavit subsequently filed was meaningless and void and failed to verify positively that defendant's address was then unknown to affiant and that affiant had been unable to ascertain the same with the exercise of reasonable diligence.

■ In National Supply Company v. Chittim, Wyo., 387 P.2d 1010, 1011, we said the requirements of our rule pertaining to service by publication are minimum; that any omission of statements which are re-

quired under the rule are fatal; and that such omission prevents the trial court from securing jurisdiction of defendant. We need not review again the authorities cited for this holding. The holding applies equally well to the case now before us.

■ While counsel for appellant-wife has not urged the matter, we think we should call attention to the fact that the record presented to us discloses a further fatal defect in the service on Mrs. Emery. The proof of publication reflects that the last date of publication was July 18, 1961. According to the published notice, defendant was required to answer by August 16, 1961. Consequently, only 29 days were allowed for answer following the last day of publication, instead of 30 days as provided for by Rule 12(a), W.R.C.P.

This exact situation was present in National Supply Company v. Chittim, supra, and we there held the defect fatal to the jurisdiction of the court. See at 387 P.2d 1012.

■ Appellee argues that appellant brought her action for vacation under §§ 1–325 and 1–328, W.S.1957, alleging fraud pursuant to § 1–325(4), W.S.1957; that § 1–328 requires a showing as to what defense, if any, applicant has to the original action; and that applicant failed to make such a showing. This argument is not good because statutes pertaining to the modification and vacation of judgments after term are intended to apply to judgments having some degree of validity.

■ There is nothing in these statutes which purports to or which could breathe validity into a judgment which is wholly void on account of being entered in the absence of jurisdiction over the defendant. In Wunnicke v. Leith, 61 Wyo. 191, 157 P.2d 274, 277, this court said a judgment which is wholly void is in legal effect a nullity; and consequently, no showing of merits is necessary in support of an application to have it vacated.

■ According to § 1–325, authority is given for the district court to "vacate or

modify" its own judgment. Modification would necessarily require consideration of applicant's defense, and there is good reason for provisions relating to such defense, even when fraud is involved. But when it is sought to vacate a judgment wholly void for lack of jurisdiction, such provisions are irrelevant.

As stated in 30A Am.Jur., § 693, p. 659, the power of a court to vacate a void judgment is regarded as inherent and independent of any statutory authority. In the same text, on page 658, it is indicated that even though a void judgment is a nullity, a court will not permit it to encumber the record and will vacate the ineffectual entry thereof on proper application at any time. Also, in 49 C.J.S. Judgments § 267, pp. 480–481, it is said under or apart from statutory provisions, invalidity of a judgment void for want of jurisdiction, as distinguished from a judgment merely voidable or erroneous, is ground for vacating it—at least if such invalidity is apparent on the face of the record.

We think the correct rule is as stated in 3 Barron & Holtzoff, § 1327, p. 412 (1958). In discussing relief against a judgment that is void, under Federal Rule 60(b) (4), it is said when the judgment is void there is no question of discretion on the part of the court; either the judgment is void or it is valid; and when the matter of its validity is resolved, the court must act accordingly.

A void judgment is not binding. It confers no rights and equitable relief is proper to prevent harm resulting from the fact that the judgment appears or purports to be valid. A.L.I. Restatement, Judgments, § 117, p. 565 (1942).

We are aware that Mr. Emery remarried five days after the divorce decree was entered, and of course it is regrettable that his remarriage must be considered a nullity. However, we cannot make a judgment which is void for lack of jurisdiction valid to accommodate the convenience of parties.

The judgment for divorce should have been vacated.

Reversed and remanded with instructions to vacate.

Mr. Justice GRAY, dissenting.

I agree with the holding of the majority that the decree of divorce was void for want of jurisdiction over the appellant because of the defective service of process. I would also agree that appellant was free to attack the decree "in any way and at any time * * * by proper proceedings," Bank of Commerce v. Williams, 52 Wyo. 1, 69 P.2d 525, 531, 110 A.L.R. 1463, and no showing of a defense to the action was necessary in support of the application to vacate the decree, Wunnicke v. Leith, 61 Wyo. 191, 157 P.2d 274, 279. My disagreement is with the premise that the trial court was compelled to grant appellant relief despite all other circumstances in the case. I think the law is not that exacting.

The case here is not dealing with property rights as in Wunnicke. The record affirmatively shows that there was no property in Wyoming affected by the decree and the decree dealt solely with the marital status of the parties, a matter over which the trial court had jurisdiction. When there is added to that the remarriage of appellee to an entirely innocent third person—so far as this record shows—I think it is necessary to explore more fully the premise upon which the holding of the majority opinion rests.

In the first instance I think the reliance placed on the rule pronounced by Barron & Holtzoff is misplaced. The application here was not made under Rule 60(b)(4) of Wyoming Rules of Civil Procedure and it was not so treated here or in the trial court. Neither was it an independent action within the permissive statutory procedures excepted from the rule. It was an independent action invoking the equity powers of the court. It is not suggested that the adoption of Rule 60(b)(4) abrogated previous decisions of this court which took cognizance

of that power. Rush v. Rush, 58 Wyo. 406, 133 P.2d 366, 372.

In James v. Lederer-Strauss & Co., 32 Wyo. 377, 233 P. 137, 141, we also recognized the general rule that the granting or refusing of an application to vacate a judgment rests within the sound discretion of the trial court, even though such judgment was wholly void. Whether or not that discretion was abused is to be tested by established equitable principles. See A. L.I. Restatement of the Law, Judgments § 117(a), p. 565 (1942). And with respect to divorce decrees the courts have been rather insistent that equity be done. 3 Freeman on Judgments, § 1186, p. 2463 (5th Ed.), says this:

"* * * Decrees of divorce are generally treated like judgments in ordinary civil actions in suits to set them aside, except for a justifiable reluctance to annul them, manifested by the courts, after second marriages on the faith of them have been contracted."

More directly in point to the question here is the succinct pronouncement made by the Supreme Court of Colorado in Boyd v. Boyd, 68 Colo. 293, 189 P. 608, 609. It was there said:

"There is another reason why the case should be reversed. The evidence shows that plaintiff brought the suit from mercenary motives, for the purpose of subjecting defendant to her monetary demands. Motive is immaterial in a suit involving property rights only, but in an action to set aside a divorce where there has been a remarriage, something more than property rights is involved; conscience, good faith, honesty of purpose, and reasonable diligence are required, and the doctrine of laches, estoppel, and acquiescence prevails. * * *"

In Swift v. Swift, 239 Iowa 62, 29 N.W. 2d 535, 539, the Supreme Court of Iowa, faced with a void divorce decree because of a defect in constructive service and a judgment of the trial court setting it aside, had this to say:

"* * * It is not questioned, nor can it be, that a party against whom a void decree of divorce is granted may be barred by laches or estoppel from attacking it. * * *

"It is true the mere fact of plaintiff's remarriage does not prevent the court from setting aside the divorce. A party who procures a void divorce cannot by his own act in marrying again prevent the court from setting aside the decree. However, plaintiff's new marriage is an important consideration in determining whether the decree should be vacated. Courts are disposed to protect an innocent third person who has married a divorced spouse, also to protect possible issue of such marriage, and manifest reluctance to set aside the divorce. * * *"

The principle so pronounced has been cited with approval in several other jurisdictions.

When the circumstances of the instant case are viewed in the light of the foregoing equitable principles, I am unwilling to hold that the trial court abused its discretion. I think it was entirely warranted in finding and concluding, as it did, that appellant had not brought the action in good faith and was guilty of laches. There is substantial evidence to support that determination.

For reasons undisclosed by this record the appellant departed from the home of the parties in South Dakota in the year 1955 and from that time on remained the wife of appellee in name only. She made her home in the East except for a short interval in 1957 when she returned to Rapid City, South Dakota, and in June 1958 commenced an action for divorce from appellee. Upon the filing of the action she again departed for the East and at all times since, by her own admission, has concealed her whereabouts from appellee. That she was not desirous of obtaining a divorce can certainly be inferred. The action in South Dakota simply laid there in repose until 1963 when it was used for the purpose of taking the deposition of appellee

to obtain information for use in the instant action. Her activity here is entirely in keeping with her desires to thwart a divorce. Skillful and studied effort was made to avoid an appearance in appellee's divorce action so that the case could be tried on its merits. That is difficult to understand when there was no property involved and appellant by her own statement established that she was self-supporting and was seeking no support from appellee. Other than the severance of the marital relation she made no showing of any harm, injury, or injustice occasioned her by the decree. The only explanation of her resistance to divorce was that offered by appellee to the effect that so long as appellant could remain the wife—in absentia—of appellee she was entitled to certain privileges "of the Officers' Club and the like" as the wife of a retired marine officer. If the decree were not vacated she was apt to lose those privileges. That appellant was also motivated by a vengeful purpose could be inferred from a minor but significant incident. Her only communication with appellee subsequent to 1958 was a telephone call to appellee on September 26, 1961, when, after being informed of appellee's remarriage, she called simply to say, "Well, you have got two wives." Little wonder that the trial court was not moved to exercise its equitable powers.

As to the matter of laches, it appears that appellant learned of the divorce and appellee's remarriage in September 1961. She testified that she was so informed by the call from a friend in Rapid City who had seen the announcement in the newspaper. Evidence fixing the date of the call or of the newspaper was not produced. From that, and from the testimony of appellee that he returned to Rapid City with his new bride shortly after August 23, 1961, an inference could be drawn that it occurred sometime prior to September 18, 1961, the last date upon which appellant could have taken an appeal from the divorce decree. Had that been done the decree would have been set aside without question.

But, assuming that she was not so informed until September 26, 1961, a ready and expedient remedy was available under the provisions of Rule 60(b), Wyoming Rules of Civil Procedure. Had appellant moved promptly under the rule on the ground that the judgment was void, I have no doubt that the trial court would have vacated the decree. But that was not the theory advanced by appellant in the trial court. Appellant's theory was that the decree was vitiated by fraud, and, of course, a motion on that score would subject appellant to the jurisdiction of the court. In re Bank of Newcastle, 15 Wyo. 501, 89 P. 1035, 1037. An expedient remedy was also available under the provisions of § 1–326, W.S. 1957, which permits the setting aside of a decree made on service by publication when notice has not been received. Here again, however, that would have required appellant to submit to the jurisdiction of the court. Another expedient remedy available to appellant was prompt trial of her own divorce case in South Dakota. The Wyoming decree furnished no impediment to that action. A decree that is void on the face of the record is void anywhere.

Appellant did none of these things. Rather, as the trial court found, appellant sat back inexcusably for a period of almost two years and permitted the innocent second wife substantially to change her position in life. She left her home in Wisconsin and moved into the home of appellee in Rapid City. It is not unreasonable to suppose that she established herself in that community as the lawful wife of appellee. So far as the record shows the appellee for the first time since 1955 has had a home, shared with a wife who has brought him domestic tranquillity and happiness. Is that all to be destroyed simply to satisfy the vengeful purpose of appellant‚ to see that this did not happen? I think not. To do so is contrary to the public interest‚ to decency, to good morals, and to the welfare of society. Swift v. Swift, 239 Iowa 62, 29 N.W.2d 535, 539; Shammas v. Shammas, 9 N.J. 321, 88 A.2d 204, 210–211.

Appellant's counsel argues here that laches does not apply for the reason that the action was brought within the two-year period fixed by the provisions of § 1–333, W.S. 1957. No authority is cited for that proposition and there are holdings to the contrary. Grant v. Grant, 233 S.C. 433, 105 S.E.2d 523, 527. Of course, the simple answer is that this action was not brought under any rule or statute of this State. It was an independent action governed by equitable principles.

Obviously the trial court was faced with a distasteful and difficult decision. It had in its records a void judgment, and it is the policy of the courts to purge the records of such judgments. On the other hand, to exercise such undoubted power would be a solemn declaration that the innocent second wife was nothing more than a common adulteress. I would hold not only that there was no abuse of discretion on the part of the trial court, but that it exercised its discretion wisely.

The judgment should be affirmed.