HATTIE L. SWIFT, Appellant, v. THOMAS O. SWIFT, Appellee.

No. 47148.

(Reported in 29 N. W. 2d 535)

November 11, 1947.

Rehearing Denied January 16, 1948.

Louis J. Kehoe, S. W. Livingston, and Robert Day, all of Washington, for appellant.

Paul V. Shearer and Baldrige & Bailey, all of Washington, for appellee.

Garfield, J.—The principal questions presented are whether a decree of divorce granted plaintiff on August 30, 1946, is void because defendant was not legally served with original notice and, if void, whether defendant is barred by laches or estoppel from challenging the decree.

The record discloses extreme carelessness on the part of plaintiff's attorney Louis J. Kehoe. Also a violation by him of professional ethics in testifying on a vital matter at the hearing which led to this appeal without withdrawing as an attorney although plaintiff was well represented at such hearing

by other counsel. See Cuvelier v. Town of Dumont, 221 Iowa 1016, 1020, 1021, 266 N. W. 517, and cases cited; annotation 118 A. L. R. 954.

Plaintiff, Hattie L. Swift (now Hattie L. Cuddeback), and defendant, Thomas O. Swift, were married in 1921. They have four children. The youngest is 18. About June 3, 1946, defendant left Washington, Iowa, where the parties lived and went to Kansas with his truck. Plaintiff did not hear from him until he telegraphed her on August 1, 1946. In the meantime, on July 5th, plaintiff had gone to Mr. Kehoe's office regarding a divorce. On that day Kehoe prepared and filed a petition for divorce and also prepared an affidavit that personal service of original notice could not be had on defendant in Iowa. The affidavit was not filed until April 25, 1947, after defendant moved to set aside the divorce decree. Original notice was published on July 6th, 13th and 20th in a newspaper of general circulation in the county where the petition was filed, and sworn proof of publication filed before default was taken. (See Rules 62, 63—all references to rules are to Rules of Civil Procedure.)

On August 1, 1946, defendant sent plaintiff by telegraph from Goodland, Kansas, $150 to be paid upon indebtedness contracted by him for which plaintiff was also liable. The next day plaintiff showed the telegram, which revealed defendant's whereabouts, to Mr. Kehoe who advised serving defendant personally with notice of the divorce suit. Kehoe thereupon dictated an original notice and a letter to the sheriff at Goodland, Kansas, directing him to serve the notice upon defendant. The letter and notice, with copy of petition attached, were inclosed in an envelope addressed to the sheriff at Goodland and deposited in the mails on August 2d.

When the notice was sent back to Kehoe by the sheriff at Goodland the return of service upon the notice recited it was received on September 3, 1946, and service was made on September 9th. The return was dated September 10th. In the meantime plaintiff had procured her divorce decree on August 30th. Kehoe never filed the notice sent to Kansas and returned to him showing service on September 9th.

On March 24, 1947, defendant filed a petition in equity to set aside the divorce decree on the ground original notice was not legally served upon him. On April 18th he withdrew this petition and filed in the divorce suit a motion to set aside the decree on the same ground. In the meantime, on March 11, 1947, in Missouri, plaintiff had married one Cuddeback with whom she commenced to keep company in the late fall of 1946. When defendant filed his petition to set aside the decree, Kehoe belatedly discovered the affidavit for service of notice by publication had not been filed and that the notice which had been sent to Kansas showed defendant had been served ten days after the divorce decree was granted.

Mr. Kehoe then entrained for Goodland, Kansas, where, with the aid of his office copy of his letter of August 2d to the sheriff and because of the fact the decree was entered on August 30th, Kehoe convinced the sheriff he in fact received the notice for service on defendant on August 3d, served it on August 9, 1946 (twenty days before the divorce decree was granted—see Rule 53), and made his return on August 10th. On March 26, 1947, as requested by Kehoe, the sheriff signed and swore to a new return of service dated August 10, 1946, showing receipt of the notice on August 3d and service on August 9th. This return, placed upon a duplicate notice Kehoe had taken with him to Kansas, was then filed by Kehoe in the divorce proceeding in Washington, Iowa.

When defendant's motion to set aside the decree was heard on May 26, 1947, the sheriff at Goodland had convinced himself his original return stated the true facts and he so testified as a witness for defendant, as did the county attorney who officed next to the sheriff and who typed that return. Whether the notice was served on September 9th, as stated in the original return and as contended by defendant, or on August 9th, as stated in the belated return and as contended by plaintiff, was vigorously disputed.

Defendant contends the divorce decree was entered without jurisdiction over him because he was not personally served with notice until September 9th and the failure to file the affidavit for publication of notice rendered the published notice a nullity.

On the disputed fact question the trial court held with defendant that he was not served in Kansas until ten days after the decree was granted on August 30th. He also ruled, as contended by defendant, the published notice was a nullity, there was no jurisdiction over defendant, and the divorce decree was void. He also held defendant was not barred by laches or estoppel from challenging the decree.

I. Plaintiff argues in effect that failure to file the affidavit for publication of notice is excused by the admitted fact, shown upon the hearing which led to this appeal, defendant was in Kansas during the pendency of the divorce suit and therefore personal service of notice could not be had on him in Iowa. While of course it is true, as plaintiff suggests, the published notice provided defendant as much information as if the affidavit had been filed, we cannot accept plaintiff's argument.

Rule 60 provides service may be made by publication in divorce and other designated causes "After filing an affidavit that personal service cannot be had on an adverse party in Iowa." Filing the affidavit is a condition precedent to the validity of published notice. The affidavit must be filed before the notice is published. A judgment rendered on published notice without an appearance by defendant when the affidavit has not been so filed is void. We conclude the published notice here was insufficient to confer jurisdiction. Priestman v. Priestman, 103 Iowa 320, 323, 72 N. W. 535, and cases cited; Guinn v. Elliott, 123 Iowa 179, 182, 98 N. W. 625; Belknap v. Belknap, 154 Iowa 213, 214, 215, 134 N. W. 734; Carr v. King & Tomlinson, 184 Iowa 734, 737, 169 N. W. 133. See, also, 42 Am. Jur., Process, section 90; 50 C. J., Process, section 132.

While the cited cases arose under the statutes superseded by Rule 60, the Rule does not differ materially from the statutes (section 11081, Code, 1939, and its predecessors) on the point now considered. Sweeley v. Van Steenburg, 69 Iowa 696, 26 N. W. 78, upon which plaintiff relies, does not conflict with the decisions cited above. In the Sweeley case the affidavit for publication of notice was filed as required by statute.

II. Plaintiff contends the trial court violated section 683.2, Code, 1946, which reads:

"The judgment shall not be vacated on motion or petition until it is adjudged there is a cause of action or defense to the action in which the judgment is rendered."

This section appears in chapter 683, Code, 1946 (552, Code, 1939), on procedure to vacate or modify judgments for mistake, neglect or omission of the clerk and on other specified grounds. Defendant did not proceed under these provisions. Nor was he required to do so. They do not relate to the setting aside of a judgment void for want of jurisdiction. If notice was not served upon defendant until September 9th, the divorce decree is void and the court could properly set it aside in this proceeding, if plaintiff has not sustained her claim of laches or estoppel, without a showing there is a defense to plaintiff's suit for divorce. Williamson v. Williamson, 179 Iowa 489, 161 N. W. 482; Royer v. Mershon, 184 Iowa 1065, 1068, 169 N. W. 400; Cummings v. Landes, 140 Iowa 80, 87, 117 N. W. 22; Iowa Sav. & L. Assn. v. Chase, 118 Iowa 51, 53, 54, 91 N. W. 807.

The cases just cited were decided before section 12787, Code, 1939 (4091, Code, 1897), was superseded by Rule 252. However, the rule is quite similar to the statute and we see no reason for rejecting these precedents.

Cases relied on by plaintiff on this proposition are not in point. Thoreson v. Central States Elec. Co., 225 Iowa 1406, 1410, 283 N. W. 253, and cases therein cited involve attempts to vacate or modify a judgment under chapter 552, Code, 1939, which contained what is now section 683.2, Code, 1946 (12796, Code, 1939), quoted above. Bates v. Ely Tr. & Sav. Bk., 219 Iowa 1356, 261 N. W. 614, and Wade v. Swartzendruber, 206 Iowa 637, 220 N. W. 67, consider attempts to set aside defaults under section 11589, Code, 1939, which required an affidavit of merits to be filed. We may observe that section 11589 is now superseded by Rule 236 and the requirement of an affidavit of merits has been eliminated from the rule.

■ III. Upon the reasoning expressed in Division II hereof, plaintiff's argument that defendant was required by Rule 236 to file his motion within sixty days after entry of the divorce decree is likewise without merit. Rule 236 provides for

setting "aside a default. or the judgment thereon, for mistake, inadvertence, surprise, excusable neglect or unavoidable casualty."

Defendant did not and was not required to proceed under Rule 236. The time limit therein fixed does not apply to an attack upon a judgment entered without jurisdiction. Williamson v. Williamson, supra; Royer v. Mershon, supra; Spencer v. Berns, 114 Iowa 126, 86 N. W. 209. See, also, 27 C. J. S., Divorce, sections 168, 169c; 17 Am. Jur., Divorce and Separation, section 459; annotations 157 A. L. R. 6, 60, 61; 154 A. L. R. 818. While section 11589, Code, 1939 (3790, Code, 1897), which Rule 236 supersedes, was in force when the cited cases arose, they are equally applicable to the present controversy upon the point here considered.

IV. As stated, upon the disputed fact question the trial court found defendant was not served with original notice until September 9, 1946, after the entry of the divorce decree. Trial here is de novo. Staples v. Staples, 238 Iowa 229, 232, 233, 26 N. W. 2d 334, 335; Whitcomb v. Whitcomb, 46 Iowa 437, 440. But the finding of the trial court upon such a question is entitled to weight. Chader v. Wilkins, 226 Iowa 417, 420, 421, 284 N. W. 183; Pyle v. Stone, 185 Iowa 785, 791, 171 N. W. 156.

In view of the weight the lower court's finding deserves and the strong presumption that obtains in favor of the sheriff's original return, especially when supported by his oral testimony (see Chader v. Wilkins, supra, and cases cited; 42 Am. Jur., Process, section 130), we are not disposed to reach a contrary conclusion on this disputed fact question. We may observe, however, the truth of the matter is not entirely free from doubt.

V. There remains the question whether, as plaintiff contends, defendant's attack upon the decree is barred by laches or estoppel. This presents only a question of law. On this issue there are no disputed facts. If the trial court's conclusion on this issue is erroneous, of course there must be a reversal. It is not questioned, nor can it be, that a party against whom a void decree of divorce is granted may be barred by laches or

estoppel from attacking it. We have so held several times. See, for example, Robson v. Kramer, 215 Iowa 973, 978, 245 N. W. 341, and authorities cited; Farr v. Farr, 190 Iowa 1005, 1007, 181 N. W. 268; Hurley v. Hurley, 117 Iowa 621, 91 N. W. 895. We hold here defendant is precluded by laches, estoppel and lack of good faith from challenging this decree.

It is true the mere fact of plaintiff's remarriage does not prevent the court from setting aside the divorce. A party who procures a void divorce cannot by his own act in marrying again prevent the court from setting aside the decree. However, plaintiff's new marriage is an important consideration in determining whether the decree should be vacated. Courts are disposed to protect an innocent third person who has married a divorced spouse, also to protect possible issue of such marriage, and manifest reluctance to set aside the divorce. Rush v. Rush, 46 Iowa 648, 650, 26 Am. Rep. 179; annotation 157 A. L. R. 6, 51, 52; 27 C. J. S., Divorce, section 171a.

In a controversy of this kind the court is concerned not alone with the rights of the individuals involved but also with the public interest. Hamilton v. McNeill, 150 Iowa 470, 478, 129 N. W. 480, Ann. Cas. 1912D, 604; Walters v. Walters, 151 Minn. 300, 186 N. W. 693, 694; annotation L. R. A. 1917B, 409, 413, 414. See, also, Hopping v. Hopping, 233 Iowa 993, 996, 10 N. W. 2d 87, 89, 90, 152 A. L. R. 436, 439. In many situations it may be in the public interest to recognize an invalid divorce and preserve a remarriage rather than to resort to a dubious attempt to resurrect the original marriage. Goodloe v. Hawk, 72 App. D. C. 287, 113 F. 2d 753, 756, 757 (Vinson, J.).

Mere delay in the action taken by defendant does not amount to laches unless prejudice has resulted therefrom. Jennings v. Schmitz, 237 Iowa 580, 589, 20 N. W. 2d 897, 903, and authorities cited; McNeil v. McNeil, 9 Cir., Cal., 170 F. 289, 291, 292. The safety of society demands that one who seeks to overthrow an apparently valid decree of divorce should proceed with the utmost promptness upon discovery of facts claimed to show its invalidity. He should apprehend that one who has secured such a divorce may endeavor to marry again,

thus entangling some innocent person in intolerable difficulties, should the divorce be afterwards annulled. McNeil v. McNeil, supra. ·

An estoppel is based upon the idea that one who has taken a certain position should not thereafter be permitted to change it to the prejudice of one who has relied thereon. Seymour v. City of Ames, 218 Iowa 615, 619, 255 N. W. 874, 876; Riggs v. Meka, 236 Iowa 118, 122, 17 N. W. 2d 101, 103; Staples v. Staples, supra, 238 Iowa 229, 236, 26 N. W. 2d 334, 337.

It is important to consider the motives of the party who seeks to annul the divorce. He must be actuated by good motives. 27 C. J. S., Divorce, section 171a. This is especially true where a third party in good faith has married the divorced spouse. See annotation 157 A. L. R. 6, 50; Whittaker v. Whittaker, 151 Ill. 266, 37 N. E. 1017, 1018.

"The state is interested * * * in preventing attacks on the judgment for purely malicious motives." Walters v. Walters, supra, 151 Minn. 300, 302, 186 N. W. 693, 694. Nothing can call a court of equity into activity but conscience, good faith and reasonable diligence. Copeland v. Voge, 237 Iowa 102, 110, 20 N. W. 2d 2, 6.

The Washington county court had jurisdiction of the subject matter of the divorce and of plaintiff. See Farr v. Farr, 190 Iowa 1005, 1007, 181 N. W. 268; Saul v. Saul, 74 App. D. C. 287, 122 F. 2d 64, 70, and authorities cited (Rutledge, J.). The lack of jurisdiction is of the person of defendant and arose because personal service upon him was not in time. But service of the notice on September 9, 1946, gave him actual knowledge of the commencement of the suit. Indeed, defendant testifies he read the notice on the previous day.

Defendant admits the county attorney at Goodland explained the notice to him on September 9th and advised him he was required to make defense within twenty days; also to see an attorney back in Washington. He (county attorney) said he could not handle the case. The county attorney, defendant's witness, says he advised defendant "he should contact a lawyer in Washington, Iowa, to represent him if he cared to contest it."

Defendant further says he had actual knowledge on September 10th or 11th the divorce had been granted on August 30th. Defendant was arrested on a criminal charge on October 7th and returned by a deputy sheriff to Washington from Kansas. (This charge seems to have arisen out of defendant's leaving Iowa with certain mortgaged equipment.) This officer again told defendant the divorce had been granted on August 30th. Defendant stayed in Washington from the time he was returned on the criminal charge. He made no attempt to confer with an attorney about the divorce until the following March. This, in view of testimony above mentioned, would indicate defendant did not care to contest the divorce.

Within ten days after October 7th defendant saw and talked to plaintiff. These meetings were quite frequent until plaintiff married Cuddeback on March 11th. Defendant talked to plaintiff and Cuddeback together and appeared to be friendly. On December 21st plaintiff became engaged to marry Cuddeback. Defendant knew this and talked to plaintiff about it down to the time of the marriage. Defendant never suggested questioning the divorce.

About two weeks before plaintiff married Cuddeback defendant proposed to plaintiff she go to Missouri and marry him (defendant). During the time from October 7th to March 11th defendant talked to his daughter on several occasions. Also to one of the sons. They talked about plaintiff's divorce, her keeping company with Cuddeback and her plan to marry him.

The divorce decree does not require defendant to contribute to the support of plaintiff or the minor son whose custody was awarded her. Defendant seems to have made no such contribution nor offer thereof. At least in this sense, defendant apparently accepted the benefits of the decree.

It is plain defendant's conduct toward plaintiff during the six months between the time he learned of the divorce and the marriage to Cuddeback is utterly inconsistent with any attempt on defendant's part to have the divorce annulled.

That defendant is not actuated by commendable motives but by a spirit of revenge and a desire to annoy and harass plaintiff and her present husband appears quite clearly from

undisputed testimony. (There is no dispute in any evidence referred to in this division.) Three witnesses, including the daughter and son, testify to threats made by defendant to each witness that if plaintiff married Cuddeback, he (defendant) would make trouble and do what he could to break up the marriage. Defendant hinted to the son he had a plan to make trouble that he would reveal after the marriage. To another witness defendant threatened "If Hattie attempted to get married he had an ace in the hole he was going to pull on her." To none of these witnesses did defendant reveal how he intended to accomplish his purpose.

There is no indication plaintiff knew of any defect in the divorce nor that defendant planned to attack it until he filed his petition to set it aside thirteen days after plaintiff and Cuddeback were married and commenced to cohabit as wife and husband. It is now obvious defendant planned to wait until after the marriage and then seek to disrupt it by the attack upon the divorce he has since commenced. If any other inference may be drawn from the evidence of defendant's threats it has not been suggested.

The plainest considerations of good faith and reasonable diligence, not only to plaintiff but to Cuddeback, to possible issue of the marriage and to society itself, demanded that defendant make known his plan to attack the divorce decree before the marriage was solemnized on the strength of that decree.

There is no evidence plaintiff did not act in good faith throughout. The divorce suit was commenced only after careful deliberation, consultation with the four children and reasonable efforts to ascertain defendant's whereabouts. The oldest son went to Kansas to try to find defendant but did not locate him. There seems to be no hope of a reconciliation between plaintiff and defendant even if plaintiff were free to resume marital relations with him. There is no evidence plaintiff procured the divorce in order to marry Cuddeback nor even that she knew him when she commenced her action. They started keeping company in the late fall (the decree was granted on August 30th). Nor is there evidence Cuddeback is not an innocent party.

Perhaps plaintiff and Cuddeback are subject to criticism for marrying in Missouri within a year from the date of the filing of the decree. See sections 598.17, 598.18, Code, 1946. But see, also, Dudley v. Dudley, 151 Iowa 142, 130 N. W. 785, 32 L. R. A., N. S., 1170; Farrell v. Farrell, 190 Iowa 919, 925, 926, 181 N. W. 12. However, any culpability in this act is somewhat mitigated by the fact plaintiff's attorney advised her before the marriage "that many persons in similar situations married within the year by going to another state."

We are persuaded not only that defendant is precluded by laches, estoppel and lack of good faith from seeking an annulment of the decree, but also that a reversal will best serve the ends of justice and the interests of society as well.—Reversed.

OLIVER, C. J., and BLISS, HALE, MULRONEY, SMITH, and HAYS, JJ., concur.