Argued and submitted December 8, 1980, reversed and
remanded March 16, reconsideration allowed, former opinion adhered to
as modified (52 Or App 655, 628 P2d 791) June 1,
petition for review denied September 22, 1981 (291 Or 662)

# STATE ex rel STATE OF OKLAHOMA et al,
## *Appellant,*
### *v.*
## GRIGGS,
### *Respondent.*

## (No. R 79-10-67800, CA 18021)

625 P2d 660

J. Russell Ratto, Deputy District Attorney for Multnomah County, Portland, argued the cause for appellant. With him on the brief was Harl Haas, District Attorney, Portland.

Robert A. Bennett, Portland, argued the cause for respondent. With him on the brief was Willner, Bennett, Bobbitt & Hartman, Portland.

Before Gillette, Presiding Judge, and Roberts, Judge, and Campbell, Judge Pro Tempore.

CAMPBELL, Judge Pro Tempore.*

*Appointed to Supreme Court December 1, 1980.

**CAMPBELL, J.** pro tempore.

Plaintiff, former wife, a resident of Oklahoma, appeals from an order entered under the Uniform Reciprocal Enforcement of Support Act (URESA) by which the Oregon court obligated former husband to pay current child support but denied any judgment for past due child support arising under an Oklahoma decree, on the ground that the Oklahoma judgment for child support was rendered in violation of husband's due process rights and therefore is not entitled to full faith and credit in Oregon. We reverse.

Husband and wife were married in April, 1969, in Louisiana, where husband was undergoing basic military training. At the time of the marriage both parties were domiciled in Oklahoma. Husband had gone to high school there and considered Duncan, Oklahoma, his home town. After a honeymoon in Louisiana, where husband had intercourse with wife once, the couple returned to Oklahoma and lived together there for three weeks. Husband then left again to finish his military training and wife remained in Oklahoma. Thereafter, husband saw wife only two or three times. Husband testified, however, that he had intercourse with wife at least once in Duncan, Oklahoma, but that wife had used birth control devices, indicating that she did not want to get pregnant.

In July, 1969, the parties separated. Wife told husband she was going to get a divorce. She gave no indication that she was pregnant. Husband then went AWOL from the service and came to Oregon. He remarried in February, 1970. The child of husband and former wife was born March 19, 1970.

Wife wrote several letters to the Army and other officials attempting to locate her husband, but without success. Therefore, wife served husband with notice of her institution of divorce proceedings by publication. She obtained a dissolution of the marriage in Duncan, Oklahoma, on April 23, 1973. The decree awarded custody of the child to wife and required husband to pay child support of $100 a month. Husband had no actual knowledge of the proceedings, the decree, or of the fact that he had a child.

The FBI located husband in Oregon in January, 1973, and took him to Ft. Lewis, Washington, to face

charges for desertion. He stayed there until his discharge in April, 1973. He then returned to his employment in Oregon, where he has remained to date. Wife finally located husband and had him served with her URESA petition for support payments in December, 1979. After receiving the petition, husband telephoned wife. This was the first time he had communicated with her since his departure from Oklahoma in 1969.

At the URESA hearing in Oregon, husband contested the Oklahoma court's jurisdiction to grant a judgment for child support, contending that the court lacked personal jurisdiction. The trial court agreed, denying the judgment for past due support on the grounds that husband had insufficient minimum contacts with Oklahoma and that wife's service by publication was insufficient to satisfy the requirements of due process. Wife assigns as error the trial court's conclusions and also contends the court exceeded the scope of review permissible in a collateral attack on a judgment.

■ A valid judgment imposing a personal obligation on defendant may be entered only by a court having personal jurisdiction over defendant. *Pennoyer v. Neff,* 95 US 714, 732-733, 24 L Ed 565 (1878). Effective personal jurisdiction is subject to both statutory and constitutional requirements: First, the state must have a long-arm statute which, under the circumstances presented, confers jurisdiction; second, the court's assertion of jurisdiction must not offend defendant's due process rights guaranteed by the Fourteenth Amendment. *State ex rel Sweere v. Crookham,* 289 Or 3, 69 P2d 361 (1980); *see Worldwide Volkswagen Corp. v. Woodson,* 444 US 286, 100 S Ct 559, 62 LEd 2d 490 (1980). Due process requires both that defendant have a sufficient connection with the forum state to make it "fair to require defense of the action in the forum," *Kulko v. California Superior Court,* 436 US 84, 91, 98 S Ct 1690, 56 L Ed 2d 132 (1978) (citing *Milliken v. Meyer,* 311 US 467, 463-464, 61 S Ct 339, 85 L Ed 278, 132 ALR 1357 (1940)), and that defendant be given reasonable notice of the suit. *Kulko v. California Superior Court, supra,* citing *Mullane v. Central Hanover Bank and Trust Co.,* 339 US 306, 313-314, 70 S Ct 652, 94 L Ed 865 (1950)).

The applicable provision of Oklahoma's long-arm statute, in effect at the time, provides in part:

"Bases of Jurisdiction

"(a) A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action or claim for relief arising from the person's:

" * * * * *.

"(7) maintaining any other relation to this state or to persons or property including support for minor children who are residents of this state which affords a basis for the exercise of personal jurisdiction by this state consistently with the Constitution of the United States." 12 OS 1701.03.

Notice by publication was authorized under 12 OS 170.1 and 170.6.[1] The Oklahoma Supreme Court has consistently held that its long-arm statute extends the jurisdiction of Oklahoma courts over non-residents to the outer limits permitted by due process requirements of the United States Constitution. *Barnes v. Wilson,* 580 P2d 991 (Okla 1978); *Fields v. Volkswagen of America,* 555 P2d 48 (Okla 1976); *Hines v. Clendenning,* 465 P2d 460 (Okla 1970); and *see Worldwide Volkswagen, supra,* 444 US at 290. Thus, our analysis may focus solely on the constitutional questions presented.

■ ■ We turn first to the question of whether sufficient "minimum contacts" existed between defendant and Oklahoma to justify the court's exercise of personal jurisdiction. *Kulko v. California Superior Court, supra,* 436 US at 91. The primary jurisdictional consideration is one of fundamental fairness to the defendant: defendant's contacts

---

[1] 12 OS 170.6 provides:

"Service of summons may be made by publication in all cases in which service out-of-state is authorized by Section 1 of this act, * * *." Title 12, Oklahoma Statutes Section 170.6 Laws of 1972, Chapter 208, Section 6, effective October 1, 1972.

"Section 1" referred to above states:

" * * * service may be made outside of the state * * * in any action, including:

"1. Actions against persons who are subject to the jurisdiction of the courts of this state under the provisions of Title 12 of the Oklahoma Statutes, Section 187, 1701.2 and 1701.03." Title 12, Oklahoma Statutes Section 170.1 Laws 1972, Chapter 208, Section 208, Section 1, effective October 1, 1972.

with the forum state must be such that maintenance of the suit "does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 US 310, 316, 66 S Ct 154, 90 L Ed 95, 161 ALR 1057 (1945). Therefore, "defendant's conduct and connection with the forum state must be such that he should reasonably anticipate being haled into court" in the forum state, *Shaffer v. Heitner,* 433 US 186, 216, 97 S Ct 2569, 53 L Ed 2d 683 (1977), and defendant must "purposely avail [him]self of the privilege of conducting activities" therein, *Hanson v. Denckla,* 357 US 235, 253, 78 S Ct 1228, 2 LEd 2d 1283 (1958). However, like any standard that requires a determination of "reasonableness," the "minimum contacts" test may not be applied mechanically; rather, "the facts of each case must be weighed to determine whether the requisite 'affiliating circumstances' are present." *Kulko v. California Superior Court, supra,* 436 US at 92. In examining the reasonableness of requiring a defendant to defend a suit in the forum state, the burden imposed on the defendant will be considered in light of other relevant factors including:

"the forum state's interest in adjudicating the dispute, * * * the plaintiff's interest in obtaining convenient and effective relief, * * *; at least when that interest is not adequately protected by the plaintiff's power to choose the forum * * *; the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several states in furthering fundamental substantive social policies * * *." *Worldwide Volkswagen Corp. v. Woodson, supra,* 444 US at 292. (Citations omitted.)

■ Applying these principles to the case at hand, we find sufficient "affiliating circumstances" for the Oklahoma court to have exercised personal jurisdiction over defendant. Although defendant was not actually married in Oklahoma, Oklahoma was nonetheless the state of his personal and marital domicile. Defendant purposely availed himself of the laws of Oklahoma by relying on his wife to obtain a valid divorce decree there. Further, although defendant states the record is unclear, we think the record adequately establishes that defendant had intercourse with his wife while in Oklahoma and that the birth of a child whom defendant would have a legal obligation to

support was a foreseeable consequence of defendant's sexual act. *See State ex rel McKenna v. Bennett,* 28 Or App 155, 558 P2d 1281 (1977). Therefore, we think the intercourse may be included as one of the "affiliating circumstances" upon which jurisdiction may be based.

Moreover, Oklahoma's interest in providing jurisdiction is substantial under these circumstances. If the father does not provide for the child and the mother is unable to do so, the burden will be on the state to furnish the necessary support. *Perdue v. Saied,* 566 P2d 1168 (Okla 1977). Further, defendant has shown no other forum in which wife could have obtained relief and, by abandoning his wife in Oklahoma, he helped make it a matter of economic necessity for her to live and bring her action there. *See Hines v. Clendenning, supra,* 465 P2d at 463.

Finally, it is in keeping with Oregon's social policy to grant full faith and credit to this decree. Oregon Rules of Civil Procedure provide Oregon courts with jurisdiction over non-residents in actions relating to child support, if the parties maintained a domicile in the state for six months and if the action is filed within one year after defendant leaves the state, ORCP 4(K)(2). The rules further provide jurisdiction for "any action for declaration of paternity where the primary purpose of the action is to establish responsibility for child support, when the act of sexual intercourse which resulted in the birth of the child is alleged to have taken place in this state." ORCP 4(K)(3).

Taken together we think all of these factors suggest that, under the circumstances, it was not unreasonable for the Oklahoma court to assert personal jurisdiction over defendant. *Cf. Kulko v. California Superior Court, supra,* 436 US at 96.

Plaintiff's second and third assignments of error regard the trial court's finding that "the method of service employed was so unlikely to give notice, and the availability of better methods so apparent, that due process was denied."

■ Due process requires that notice be reasonably calculated to give defendant knowledge of the proceedings. *Mullane v. Central Hanover Bank and Trust Co., supra.*

Therefore, if service is by publication, due process is not satisfied unless due diligence has first been exercised to locate the defendant. *Mullane v. Hanover Bank and Trust Co., supra; Bomford v. Socony Mobil Oil,* 440 P2d 713 (Okla 1968). Oklahoma incorporated this constitutional requirement into the statutory scheme in effect at the time of plaintiff's divorce on April 23, 1973, by permitting service by publication in divorce actions only "if proper," and the plaintiff had filed an affidavit that defendant's "residence is unknown * * * and cannot be ascertained by any means within the control of the plaintiff." 12 OS 1273.

 The statute does not require that plaintiff's acts of diligence be set forth in the affidavit or petition for relief. However, the court must affirmatively find that service by publication was legally and duly made. *Barton v. Alpine Investments, Inc.,* 596 P2d 532, 535 (Okla 1979). The requisite procedure is set out in 12 OS 1974, Supp Ch 2, Rule 16. Under this rule the judge must conduct an inquiry "either in open court or in chambers to determine judicially whether plaintiff * * * did make a diligent and meaningful search of all reasonably available sources at hand and failed to ascertain from it the following data: (a) the whereabouts or mailing address of every person named as defendant who is so served in the action; * * *." After hearing the evidence, if the judge finds that plaintiff did in fact exercise due diligence in conducting a meaningful search, a standard recitation is to be included in the journal entry of the judgment. *Johnson v. McDaniel,* 569 P2d 977 (Okla 1977). Once the trial court has conducted such an inquiry, its "approval of publication process as a method of notification is to be regarded with the same effect as a decision upon any other fact issue submitted for judicial determination." *Bomford v. Socony Mobil Oil, supra* at 718-719. Therefore, where the affidavit for service by publication recites the statutory requirements of due diligence, and appears regular on its face, the appellate court may not, on collateral attack, go behind the finding and consider sufficiency of the evidence of due diligence. *Barton v. Alpine Investments, Inc., supra.*

 The decree before us evidences compliance with the rule and the statute by the fact that it includes the mandatory standard recitation:

"The court further finds, orders, adjudges, considers and decrees that this court has conducted a judicial inquiry into the sufficiency of plaintiff's search to determine the whereabouts of defendant who is served herein by publication and based on the evidence adduced, the court finds that the plaintiff has exercised due diligence and has conducted a meaningful search of all reasonably available sources at hand. The court approves the publication service given herein as meeting both statutory requirements and the minimum standards of both state and federal due process. Wife's affidavit in support of the order by publication stated that this action is one in which service by publication is proper and that with due diligence service of summons cannot be made upon the defendant either within or without the state by any other method."

Therefore, an Oregon court may not find the Oklahoma court's judgment void for want of jurisdiction unless something on the face of the judgment order negates that court's finding of due diligence. *Barton v. Alpine Investments, Inc., supra.* Since no such fact appears therein, an Oregon court must accept the Oklahoma court's conclusion that service by publication was constitutionally permissible in this instance and cannot set aside the judgment on jurisdictional grounds.

Reversed and remanded.