### In re the MARRIAGE OF Margaret THRAILKILL and John E. Thrailkill.

**Upon the Petition of Margaret Thrailkill and Melissa J. Thrailkill, Executor of Estate of Margaret Thrailkill, Petitioners–Appellees,**

**And Concerning John E. Thrailkill, Respondent–Appellant.**

No. 87–1590.

Court of Appeals of Iowa.

Feb. 23, 1989.

Paul H. Rosenberg of Rosenberg Law Firm, Des Moines, for respondent-appellant.

Steven H. Shindler of Wimer, Hudson, Flynn & Neugent, P.C., Des Moines, for petitioners-appellees.

Considered by OXBERGER, C.J., and DONIELSON and HABHAB, JJ.

HABHAB, Judge.

John Thrailkill appeals the decision of the district court denying his petition to vacate a default divorce decree entered on November 12, 1985. He attacks the divorce decree alleging lack of personal jurisdiction and that such jurisdiction was obtained by fraud or without diligent inquiry into Mr. Thrailkill's last known address. We affirm.

Our review of the jurisdictional question (Counts II, III, and IV of appellant's petition) raised on appeal is de novo. Iowa R.App.P. 4. We give weight to the trial court's findings of fact in this regard, especially where the credibility of witnesses is concerned; but we are not bound by them. Iowa R.App.P. 14(f)(7).

John and Margaret Thrailkill were married on July 3, 1948. They resided in Earlham, Iowa. Margaret filed for divorce on

May 13, 1985. John's whereabouts were unknown at the time of filing. Therefore, notice was given by publication.

Default decree was entered, after hearing, on November 12, 1985. Margaret died in May of 1986, leaving their six children the bulk of her estate. John filed his petition to set aside the default decree on November 11, 1986. The real dispute involves property rights. If the decree is set aside, John will participate in Margaret's estate as her surviving spouse. If it is not, he takes nothing from her estate.

## I.

■ John's petition to vacate raises jurisdictional questions which, if resolved in his favor, would render the decree void. A void judgment may be attacked at any time. It is not limited by rule 236 or rules 252 and 253. *Rosenberg v. Jackson*, 247 N.W.2d 216, 218 (Iowa 1976).

■ Death of a party obtaining an allegedly-invalid divorce does not preclude an action to set aside such decree for the purpose of establishing property rights. *In re Roedell's Estate*, 253 Iowa 438, 112 N.W.2d 842 (1962). But it is for the appellant to carry the burden of proof necessary to set aside a divorce decree. 27C C.J.S. *Divorce* § 856; *Radle v. Radle*, 204 Iowa 82, 214 N.W. 602 (1927).

## II.

■ Service of an original notice may be made by publication in any action brought to dissolve a marriage where the defendant (respondent) is a nonresident of Iowa or where his residence is unknown. Iowa R.Civ.P. 60. Prior to publication, the party seeking to use this method of service must file "an affidavit that personal service cannot be had on the adverse party in Iowa." Iowa R.Civ.P. 60. As it relates to the affidavit required under this rule to meet jurisdictional requirements, it must be filed before publication begins. *Swift v. Swift*, 239 Iowa 62, 29 N.W.2d 535, 538 (1947).

Publication of the original notice must be made once each week for three consecutive weeks. As it relates to this requirement,

rule 62 prescribes the manner to be utilized in the publication of notice. It provides:

Publication of original notice shall be made after the filing of the petition, once each week for three consecutive weeks in a newspaper of general circulation, published in the county where the petition is filed; such newspaper to be selected by the plaintiff or his attorney.

Our review of the record establishes that Margaret complied with rules 60 and 62 of the Iowa Rules of Civil Procedure.

John failed to serve and file a motion or answer on or before the date fixed in the notice as published. Rule 53 provides:

A defendant served as provided in these rules by publication or by publication and mailing must serve, and within a reasonable time thereafter file, a motion or answer on or before the date fixed in the notice as published, which date shall not be less than twenty days after the date of last publication.

Prior to taking her default, Margaret filed her proof of publication. Rule 63 provides:

Before default is taken, proof of such publication shall be filed, sworn to by the publisher or an employee of the newspaper.

## III.

This leaves us with the requirements of rule 60.1. The appellant contends that Margaret did not sufficiently comply with Iowa Rule of Civil Procedure 60.1 to give the decretal court in personam jurisdiction. Specifically, he asserts Margaret did not make "diligent inquiry" into his whereabouts in order to procure a mailing address. In this respect, Iowa Rule Civil of Procedure 60.1 provides:

(a) In every case where service of original notice is made upon a known defendant by publication, copy of the notice shall also be sent by ordinary mail addressed to such defendant at his last known mailing address, unless an affidavit of a party or his attorney is filed stating that no mailing address is known and that diligent inquiry had been made to ascertain it.

(b) Such copy of notice shall be mailed by the party, his agent or attorney not less than twenty days before the date set for written special appearance, motion or answer.

(c) Proof of such mailing shall be by affidavit, and such affidavit or the affidavit referred to in subdivision "a" of this rule shall be filed before the entry of judgment or decree. ....

■ Margaret's attorney filed an affidavit stating that John's mailing address is unknown and "that diligent inquiry has been made to ascertain it." We believe this recitation is sufficient to satisfy the requirements of rule 60.1(a). The rule does not require that petitioner's acts of diligence be set forth in the affidavit. *See State ex rel. State of Oklahoma v. Griggs,* 51 Or.App. 275, 625 P.2d 660, 665 (1981), (Reconsidered, 52 Or.App. 655, 628 P.2d 791). *See also* 27A C.J.S. § 123 at 246–247. In addition, the affidavit stated that John had left without stating where he was going or where he would be staying. The affidavit also revealed that attempts had been made to locate John through friends and others but without success.

This affidavit was filed before the entry of the decree. Iowa R.Civ.P. 60.1(c). In addition, at the dissolution hearing, testimony was taken concerning John's whereabouts and that efforts had been made to locate him.

■ Based on the record before the dissolution court, it found that it had jurisdiction of the parties to the action. But this is not conclusive, so as to become res judicata, as against allegations of lack of jurisdiction; for if resolved in John's favor, the decree against him would be void. *Miller v. Miller,* 242 Iowa 706, 46 N.W.2d 732, 733 (1951).

■ The conventional method of attacking a judgment claimed to be void is by a suit in equity. *Miller v. Farmers Cooperative Company, Lost Nation,* 176 N.W.2d 832, 834 (Iowa 1970). The judgment may be attacked by motion. *Id.* at 834. Iowa Rules of Civil Procedure 252 and 253 are not applicable in such situations, although a petition under them may be considered a motion to set aside for lack of jurisdiction in the absence of objection from the opponent. *Id.* at 834.

■ Since motions to vacate or to set aside for lack of jurisdiction are heard de novo, we must ascertain the facts, and we are to do so from the records in the case which were before the trial court and are now before us. *Id.* at 835. But, the findings of the trial court are entitled to weight. *Swift v. Swift,* 29 N.W.2d at 539.

■ The dissolution decree, having been entered by a court of record, is presumptive evidence of the facts essential to jurisdiction. *Radle,* 204 Iowa at 87, 214 N.W. at 604. The jurisdiction of course can be negated by a showing that the Rules of Civil Procedure that confer jurisdiction on the court were not complied with. *See also* 27A C.J.S. § 244 at 555.

■ When we review the record, we find more than sufficient evidence supporting the trial court's ruling that diligent inquiry had been made to locate John and that his mailing address was unknown.

The Thrailkills' marriage had been unstable since 1978. It was at this time that John met and became romantically involved with Ethel Stoklasa, who resided in Bethany, Missouri. Margaret learned of John's extramarital affair in 1982.

John was a truck driver whose assignments caused him to be absent from the family home. From 1978 until March of 1985, John left Margaret several times to live with Ethel, and left Ethel on several occasions to return to Margaret. Finally, on March 7, 1985, John left his home with Margaret, leaving a note stating that he did not know where he was going, but that if he ever felt better about himself he would contact Margaret and the children.

The seven witnesses that testified during the course of the trial, including John, stated that when he left he did not want his family to be able to locate him. Four of John's children testified at length concerning the efforts Margaret made after March 7, 1985, to contact John. The record reflects that Margaret and her children called

friends and family members here in Iowa and Oklahoma. Ethel Stoklasa was also called at least three times, but on each occasion she informed Margaret and the family that John was not with her and that she did not know where he could be located.

Margaret's first contact with John was when she received flowers from him on her birthday in April of 1985. The flowers were sent from Edmund, Oklahoma, and Margaret attempted to locate him there without success. Also, after being given his work phone number by her daughter, Becky, Margaret tried to reach him two or three times in Hinton, Oklahoma, only to be told that he did not work there.

John asserts Margaret tried to keep the divorce a secret from him. Rebecca Goldin, one of six children of the Thrailkills, testified her mother made her promise not to tell John about the divorce. Becky's husband similarly testified. Much evidence was received concerning the ill feelings between Mrs. Thrailkill and Becky's husband. Four of the remaining children consistently testified that they never heard of the alleged conversation. To the contrary, they all testified Margaret had told them to have their father contact her if he ever called them. After Margaret filed for divorce, she also had her daughter, Jennifer, call Ethel to determine if she knew where John could be located. Again Ethel responded that she did not know.

It is clear from this record that John was determined to keep his location a secret from Margaret and his family. It is equally clear that he did not reside with Ethel, who by then had turned him out. From his own testimony, John felt that it was none of his family's business where he could be reached.

Finally in September 1985, John called Rebecca from a pay phone in Coralville, Iowa. She asked her father where he was living, but once again he declined to disclose his whereabouts. John also asked her to keep their conversation confidential.

John became aware of the divorce in early December of 1985 from his daughter, Becky. According to appellant's brief, he received a copy of the divorce papers from her. He admitted he had heard about the divorce prior to December, but didn't hear about it from anyone in authority until after the divorce was final. It should be noted that John testified he first heard about the divorce during a phone conversation with his oldest daughter, Rebecca, and that he was so surprised he hung up on her. Rebecca testified she told her father in person and that the look on his face was one of shock.

We have reviewed the record and find that Margaret has complied with Iowa Rules of Civil Procedure 60 and 60.1 by employing diligent inquiry into discovering John's mailing address. We reach this conclusion after considering the affidavit, the testimony given at the time of the trial, and a review of the testimony of the various witnesses.

### IV.

As it relates to the fraud charge, we agree with the trial court that there is no evidence to support that charge. A petition to vacate judgment under Iowa Rule of Civil Procedure 252 (which is Count I of plaintiff's petition asserting fraud) is an at law proceeding and reviewable on assigned errors. *In re Marriage of Heneman*, 396 N.W.2d 797, 799 (Iowa App. 1986). The trial court has considerable discretion in deciding whether to vacate a judgment. *Id.* at 799 & 800. Those findings are binding if they are supported by substantial evidence. *Id.* at 800. There is substantial evidence to support that finding.

Accordingly, we affirm.

AFFIRMED.