# IN THE COURT OF APPEALS OF IOWA

No. 23-0685
Filed October 2, 2024


**IN RE THE MARRIAGE OF ROSANNE M. SAMUELS DA FONSECA SILVA AND DANIEL SAMUELS DA FONSECA SILVA**

**Upon the Petition of**
**ROSANNE M. SAMUELS DA FONSECA SILVA,**
**n/k/a ROSANNE MARIE SAMUELS**
      Petitioner-Appellant,

**And Concerning**
**DANIEL SAMUELS DA FONSECA SILVA,**
      Respondent-Appellee.
_____

**IN RE THE MARRIAGE OF MUSTAPHA SAMUELS EL KHAYAT AND ROSANNE SAMUELS EL KHAYAT**

**Upon the Petition of**
**MUSTAPHA SAMUELS EL KHAYAT,**
**n/k/a MUSTAPHA EL KHAYAT,**
      Petitioner-Appellee,

**And Concerning**
**ROSANNE SAMUELS EL KHAYAT,**
      Respondent-Appellant.
_____


Appeal from the Iowa District Court for Dubuque County, Monica Zrinyi Ackley, Judge.


A party appeals the district court's denial of her petition to vacate a decree dissolving one marriage and its issuance of a decree dissolving another marriage rather than granting an annulment. **AFFIRMED ON BOTH APPEALS AND**

**REMANDED WITH DIRECTIONS ON THE APPEAL OF THE DISSOLUTION DECREE.**

Alexander S. Momany of Howes Law Firm, P.C., Cedar Rapids, for appellant.

Cory R. Thein of Pioneer Law Office, Dubuque, for appellee Mustapha El Khayat.

Daniel Samuels da Fonseca Silva, self-represented appellee.


Heard by Schumacher, P.J., and Buller and Langholz, JJ.

**LANGHOLZ, Judge.**

In these two consolidated appeals, Rosanne Samuels[1] challenges two decrees dissolving her marriages with two men. She argues that the first dissolution decree—which was issued on her petition and her motion for default judgment—is void because she failed to properly serve her then-husband. And so, she contends that the first decree must be vacated and her second marriage must be annulled rather than dissolved as sought by her second husband— Mustapha El Khayat. The district court disagreed, holding that her petition to vacate the first decree was untimely and, regardless, that the decree is not void because Samuels properly made service. The court thus also denied Samuels's request to annul her second marriage and issued a dissolution decree instead.

Samuels correctly argues that a petition to vacate a decree as void for improper service need not be made within one year. But even so, Samuels cannot make such a challenge to her first dissolution decree because it was issued at her request and based on her position in that proceeding that she made proper service. Judicial estoppel prohibits this sort of conduct—asserting a position in one proceeding after successfully getting a court to accept the opposite position in an earlier proceeding—because it undermines "the integrity of the judicial process." *Tyson Foods, Inc. v. Hedlund*, 740 N.W.2d 192, 196 (Iowa 2007) (cleaned up).

We thus affirm the district court's denial of her petition to vacate the first decree. Because there is then no basis for an annulment, we also affirm the

---

[1] Samuels has gone by different names in the two district court proceedings. And the record does not show that her last name was changed back to Samuels in the most recent dissolution decree. But we refer to her consistently by the name Samuels because both parties have done so throughout their briefing here.

second decree. And we grant El Khayat his request for appellate attorney fees in defending the decree dissolving his marriage with Samuels but remand that case for the district court to determine the amount of reasonable fees.

## I. Background Facts and Proceedings

Samuels petitioned to dissolve her nine-month marriage to Daniel Samuels da Fonseca Silva in July 2016. The same day, she moved for permission to serve by publication under Iowa Rule of Civil Procedure 1.310. The motion explained that her then-husband "left the country and [she] ha[d] no information about his specific whereabouts." It was signed by Samuels's attorney. But Samuels did not attach or otherwise file any affidavit that personal service could not be completed on him in Iowa.

Four days later, the district court denied the motion. It reasoned that rule 1.310 "requires the filing of an affidavit that personal service cannot be had on the Respondent in Iowa." And the court noted, "After such an affidavit is filed, [Samuels] can renew her request."

Samuels did not file the missing affidavit. Nor did she renew her request. But three days after the first order, the court issued another order granting her motion for permission to serve by publication. This order was signed by a different district judge than the first order and included no reasoning except a finding that "[g]ood cause exists to serve the Respondent by publication."

The next month, Samuels filed a certification that notice of the suit had been published for three consecutive weeks in a local newspaper in Dubuque. And she eventually applied for a default hearing and submitted a proposed default decree. Her application asserted to the court that she had performed "service by

publication" and again said Samuels "ha[d] no information about [her then-husband's] specific whereabouts." When he did not appear at the October default hearing, the court entered a default order.

In December 2016, the court held a final hearing to prove up the default dissolution decree. It issued the decree the same day. Based on "the evidence offered by" Samuels, the court found that "[d]ue, proper and timely Original Notice was served upon the Respondent via publication." The court also concluded it had "jurisdiction of the parties and the subject matter herein." And it dissolved the marriage—just as Samuels requested.

In March 2019, Samuels married again, this time to El Khayat. Three years later, El Khayat petitioned to dissolve their marriage. The next day, Samuels sought to annul the parties' marriage in Nevada state court. But the Nevada court eventually dismissed her suit after finding that Samuels "stated on the record that she believes that [she] *can't* get an annulment in Iowa which is why she filed the Nevada action and thus appears to be forum shopping."

So in the Iowa dissolution proceeding filed by El Khayat, Samuels counter-claimed that the court should annul their marriage rather than dissolve it. She claimed that the marriage was invalid because she still had a living husband. *See* Iowa Code § 598.29(3) (2022).[2] And in her first dissolution proceeding, Samuels petitioned to vacate the dissolution decree for lack of personal jurisdiction.

In that petition, which Samuels verified under oath, she argued that the decree is void because she never properly served her then-husband by

---

[2] Samuels also claimed another ground for annulment that she has abandoned on appeal. *See* Iowa Code § 598.29(2).

publication. She noted that she never filed an affidavit as required by rule 1.310. And she said that if she had "been presented with an Affidavit supporting the Motion for Service by Publication, she would not have signed it, as she did have some idea how to reach" her then-husband. More specifically, she "knew [his] passport number and a last known address in Brazil" and that he "needed to be served by the U.S. Marshall through the Brazilian Consulate."

The two cases were consolidated. And they were both heard by the same district judge who issued the order granting Samuels permission to serve notice of the first dissolution proceeding by publication.[3] While El Khayat is not a party to the petition to vacate the first dissolution decree, he urged the court to deny it and presented evidence at the consolidated trial. That evidence included testimony of Samuels's attorney in the first dissolution proceeding and El Khayat's testimony that he is in the United States on a "visa and green card" and could be deported if his marriage is annulled rather than dissolved. Samuels did not appear for the hearing after unsuccessfully requesting a continuance because of a medical emergency. But her attorney still appeared and asked the court to rely on the verified petition as Samuels's evidence.

---

[3] At the hearing, the court thus explained the cause of the two conflicting orders:
> [T]here were two judges proceeding in the docketing at that time. [The other judge] did not adopt the order that was submitted by [Samuels's attorney], and therefore, it stayed in the docketing system as having not been attended to. So when his order [denying the motion] was entered, it then came to my attention when I took over the queue with the proposed order. When I reviewed it, I accepted [Samuels's attorney's] statement she made in the motion as an officer of the Court . . . . [Samuels] was thereafter provided authorization for service by publication.

The court denied Samuels's petition to vacate the first dissolution decree. First, the court held that the petition "was late by almost seven years" because it was not filed within one year of the decree as required under Iowa Rule of Civil Procedure 1.1013(1). Alternatively, the court held that it made "no procedural errors with regard [to] the entry of the order to permit publication of the notice and no error with the entry of the decree." The court reasoned that "[a]n attorney, as an officer of the Court, can make representations to the court that are subject to ethical considerations and perjury, akin to an affidavit." And so, according to the district court, "[t]here need not be a formal 'affidavit' with a jurat attached thereto to make [Samuels's attorney's] motion compliant" with rule 1.310.

The court also dissolved El Khayat's marriage with Samuels and denied her counterclaim for an annulment. The court found that Samuels "was not under an impediment to marry" because "[h]er prior marriage was dissolved by way of entry of a Decree of Dissolution of Marriage" in December 2016. And so, the court concluded that Samuels was "not entitled to an annulment of the marriage" because "none of the grounds can be established."

Samuels now appeals both the denial of her petition to vacate the first decree and the issuance of the second dissolution decree rather than an annulment.

## II. Petition to Vacate the First Dissolution Decree

Ordinarily, we review petitions to vacate a dissolution decree under Iowa Rule of Civil Procedure 1.1012 for correction of errors at law. *See In re Marriage of Cutler*, 588 N.W.2d 425, 429–30 (Iowa 1999). But a petition that seeks to vacate a judgment as void because of jurisdictional defects "is not limited by" rule 1.1012

or 1.1013. *See In re Marriage of Thrailkill*, 438 N.W.2d 845, 847 (Iowa Ct. App. 1989). So we review such an equitable challenge to a judgment de novo. *See id.* at 846. And the challenge can be made "at any time"—not just within the one-year limit applicable under rules 1.1012 and 1.1013. *See id.* at 847.

Samuels petitioned in 2023 to vacate the 2016 decree dissolving her marriage with Samuels da Fonseca Silva for lack of personal jurisdiction. She argued that the decree was void because she failed to properly serve her then-husband by publication since she did not file an affidavit that personal service could not be had on him in Iowa as required by Iowa Rule of Civil Procedure 1.310. *See* Iowa R. Civ. P. 1.310 (authorizing service by publication "in any action brought for . . . dissolution of marriage . . . against a party who is a nonresident of Iowa or whose residence is unknown" "[a]fter filing an affidavit that personal service cannot be had on [the] adverse party in Iowa"); *Swift v. Swift*, 29 N.W.2d 535, 538 (Iowa 1947) ("A judgment rendered on published notice without an appearance by defendant when the affidavit has not been so filed is void."). And since this was "an attack upon a judgment entered without jurisdiction," Samuels was not required to bring it within one year of the decree's issuance. *Swift*, 29 N.W.2d at 539; *see also Thrailkill*, 438 N.W.2d at 847.

So we agree with Samuels that the district court erred in holding that her petition was untimely. But we need not—and thus do not—consider the merits of the district court's alternative holding that service on Samuels's then-husband was proper even without filing an affidavit. Because whatever the merits of Samuels's argument that service was improper, she cannot make it. She is judicially estopped from doing so.

"[J]udicial estoppel is a commonsense doctrine that prohibits a party who has successfully and unequivocally asserted a position in one proceeding from asserting an inconsistent position in a subsequent proceeding." *Tyson Foods*, 740 N.W.2d at 196 (cleaned up). It "prevent[s] litigants from playing fast and loose with the courts" and intentionally contradicting themselves "as a means of obtaining unfair advantage in a forum designed for suitors seeking justice." *In re Cassidy*, 892 F.2d 637, 641 (7th Cir. 1990) (cleaned up). So, for example, an employee cannot successfully ask the workers' compensation commissioner to approve a settlement agreement by finding that a bona fide dispute existed about his workers' compensation claim and then turnaround and assert the opposite position—that the insurance company had no reasonable basis to deny his claim—in a lawsuit alleging bad faith against the insurance company. *See Wilson v. Liberty Mut. Grp.*, 666 N.W.2d 163, 166–67 (Iowa 2003). And while El Khayat has not argued for affirmance based on judicial estoppel, "[b]ecause the doctrine primarily is intended to protect the integrity of the legal process, an appellate court may raise judicial estoppel on its own motion." *Godfrey v. State*, 962 N.W.2d 84, 100 (Iowa 2021).

In her petition to vacate, Samuels asserts that her first dissolution decree is void, that she did not properly serve her then-husband by publication in 2016, and that she knew of potential ways to reach him in Brazil at that time. But in 2016, she asked the district court to issue that decree. She asserted that it was proper for the court to grant her permission to serve her then-husband by publication and that she had properly completed that service. And she repeatedly asserted that she "ha[d] no information about his specific whereabouts."

The district court also accepted all these earlier inconsistent assertions. *See Tyson Foods*, 740 N.W.2d at 197 (finding "judicial acceptance" only "when the position asserted by a party was material to the holding in the prior litigation"). The court issued the decree dissolving Samuels's marriage as she requested. In it, the court found that "[d]ue, proper and timely Original Notice was served upon Respondent via publication" and concluded it had "jurisdiction of the parties and the subject matter herein." And the court did so after first finding that service by publication was proper and granting Samuels permission to make service that way.

Because Samuels "successfully and unequivocally asserted" these positions in the first dissolution proceeding in 2016, judicial estoppel prohibits her from asserting the opposite positions in her petition to vacate that dissolution decree. *Id.* at 196 (cleaned up). Holding otherwise would undermine the integrity of the judicial process that Samuels used to obtain her dissolution decree. *See id.* And while prejudice to a party is not required for *judicial* estoppel, *see Cassidy*, 892 F.2d at 641 n.2, the interests of "protect[ing] an innocent third person who has married a divorced spouse" make the doctrine's application here particularly appropriate. *Swift*, 29 N.W.2d at 539.

Samuels responds that judicial estoppel should not apply here because her challenge to the decree raises a jurisdictional defect. *See id.* But the precedent that underpins her challenge itself shows that when seeking to use equity to set aside a decree as void for improper service, we must consider equitable doctrines like judicial estoppel. *See id.* at 539–41 (refusing to set aside a decree—even after holding that it is void for improper service—because the party seeking to do so was "precluded by laches, estoppel and lack of good faith"). And here, just as

there, it is uncontested that the district court issuing the decree "had jurisdiction of the subject matter of the divorce and of [Samuels]." *See id.* at 540. What's more, we are not presented here with a challenge by the person—Samuels da Fonseca Silva—whose right to proper service was allegedly violated. *Cf. id.* The facts here do not escape the scope of judicial estoppel.

And so, because Samuels is judicially estopped from seeking to vacate the dissolution decree, we affirm the district court's denial of her petition to vacate it.

### III. The Second Dissolution Decree and Annulment Counterclaim

On appeal, Samuels's only challenge to her second dissolution decree is that the district court should have instead granted her counterclaim for an annulment because her first dissolution decree was void, and thus she "had a husband . . . living at the time of the marriage." Iowa Code § 598.29(3). But we have rejected Samuels's challenge to the first dissolution decree. She did not have a husband living at the time of her marriage to El Khayat. So she is not entitled to annulment of that marriage. We thus affirm the decree dissolving Samuels and El Khayat's marriage.

### IV. Appellate Attorney Fees

Both parties request appellate attorney fees. In appeals of a dissolution decree, like Samuels's appeal of the decree dissolving her marriage with El Khayat, we have discretion to award appellate attorney fees. *See In re Marriage of McDermott*, 827 N.W.2d 671, 687 (Iowa 2013). When deciding "whether to award appellate attorney fees, we consider the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *Id.* (cleaned up). Considering these factors—especially the relative merits of the

parties' positions—we grant El Khayat's request for appellate fees incurred defending the decree dissolving his marriage with Samuels and deny Samuels's request.[4]

El Khayat did not submit an attorney-fee affidavit supporting his request or request any specific amount of fees. Indeed, during oral argument, counsel for both parties expressed uncertainty as to whether our court prefers receiving affidavits or remanding to the district court to decide reasonable fees. While not currently required by any appellate rule, we prefer that parties requesting appellate fees do so in their briefs and submit an attorney-fee affidavit immediately after oral argument or after the case is submitted without oral argument. The affidavit should include a request for a specific dollar amount. And it should provide an itemization of the attorney's time expended, tasks performed, and hourly rate that provides sufficient detail for us to exercise our discretion in deciding a reasonable fee award.

This approach provides the parties the swiftest resolution of their dispute with finality. By eliminating the need for further district court proceedings and a potential second appeal, it conserves judicial and party resources. And it permits the reasonableness of the fees to be decided by a court with appellate expertise that directly observed the representation in the appellate proceeding.

---

[4] Because the issues in the two appeals overlap with "a common core of facts" and "related legal theories," we can award fees in the appeal of the decree for all of El Khayat's representation in this appellate proceeding. *Lee v. State*, 874 N.W.2d 631, 649 (Iowa 2016) (cleaned up). So we do not address whether we could award fees in the appeal of the ruling on Samuels's petition to vacate the first decree. *But see In re Marriage of Murray*, No. 11-0980, 2012 WL 299672, at *4 (Iowa Ct. App. Feb. 1, 2012) (holding that appellate fees are not authorized in an appeal of court's denial of a petition to vacate a dissolution decree under rule 1.1012).

But since no such affidavit was filed here, we remand only the appeal of the decree dissolving Samuels's marriage with El Khayat.  On remand, we direct the district court to decide only the reasonable amount of appellate attorney fees to award.  *See In re Marriage of Heiar*, 954 N.W.2d 464, 473 (Iowa Ct. App. 2020).

**AFFIRMED ON BOTH APPEALS AND REMANDED WITH DIRECTIONS ON THE APPEAL OF THE DISSOLUTION DECREE.**