**In Re The MARRIAGE OF Marty Wayne IVINS and Sandra L. Jennings.**

**Marty Wayne IVINS, Appellee,**

v.

**Sandra L. JENNINGS, Appellant.**

**No. 65135.**

Supreme Court of Iowa.

July 15, 1981.

Patrick H. Payton, Des Moines, for appellant.

James McGrath and Ronald K. Watkins, of McGrath & McGrath, Keosauqua, for appellee.

Considered by LeGRAND, P. J., and UHLENHOPP, HARRIS, McCORMICK and LARSON, JJ.

LARSON, Justice.

This appeal presents another chapter in a long-standing dispute over the custody of Benjamin Ivins, now eleven. His parents, Sandra (Ivins) Jennings and Marty Ivins, were divorced in 1975. Custody of Benjamin was granted to Sandra with "reasonable rights of visitation" in Marty. In 1977, problems of visitation and child support payment arose, and a stipulation was entered to resolve them. Marty attempted to exercise his visitation rights according to the stipulation but discovered the mother and child had moved to Montana. He reacted by filing a contempt action and an application for modification seeking to obtain custody of Benjamin. An order was entered setting a hearing date and prescribing the notice to be served. (It is the notice, or lack of it, of the 1977 hearing which gives rise to the first issue on appeal.) Sandra did not appear. In an order of January 17, 1978, the court found Sandra in contempt for failing to provide visitation and also ordered a change in custody to Marty. Armed with the Iowa order, Marty obtained physical custody of Benjamin through a habeas corpus action in Washington, where the child was undergoing hospital treatment.

On January 17, 1980, Sandra brought an action seeking to modify the 1978 custody order which had transferred custody to Marty. The court denied her application, and it is from that order that Sandra has appealed. Sandra asserts (1) that the original modification order is a nullity because it was entered without jurisdiction, and custody therefore remains in her under the original dissolution decree; and (2) that the court in the last modification hearing should have granted her application to return Benjamin's custody to her. We resolve both of these issues adversely to her and affirm the district court.

*I. Notice of the original modification hearing.* The 1978 modification order recited that Sandra had been "personally served in this matter at her address at 624 Hickory, Anaconda, Montana ... in due time for appearance and defense in this matter." It also recited that she had "constructive notice" of the hearing through mailing of notices to her father and the attorney who had represented her in prior proceedings.

Sandra now claims that the mailed notice, which had been ordered by the court to be served upon Sandra's father and attorney by mail, was insufficient to accord her due process and that the purported personal service was also defective because no proof of service was made part of the record. (A copy of a proof of personal service attached to Marty's brief on appeal does not appear to have been introduced as an exhibit at trial or file-stamped as part of the clerk's records.)

We have held that, although a dissolution court retains jurisdiction of the subject matter, affected parties are entitled to notice and an opportunity to resist before the decree may be modified, *In re Marriage of Meyer*, 285 N.W.2d 10, 11 (Iowa 1979); *Van Gundy v. Van Gundy*, 244 Iowa 488, 493, 56 N.W.2d 43, 45 (1953).

Sandra asserts that despite her delay in raising the issue of notice, she may do so at any time because the modification order was void for lack of jurisdiction. She relies upon *Rosenburg v. Jackson*, 247 N.W.2d 216 (Iowa 1976) and *Dimmitt v. Campbell*, 260

Iowa 884, 151 N.W.2d 562 (1967), which held that an action to vacate a judgment, void for lack of personal jurisdiction, is not subject to the time limitations prescribed by our rules of civil procedure. *Dimmitt* further said that "neither laches nor estoppel can validate" such a judgment. 260 Iowa at 888, 151 N.W.2d at 565. And *Royer v. Mershon*, 184 Iowa 1065, 1068, 169 N.W. 400, 401 (1918) said such judgment "is subject to attack, either direct or collateral, at *any* time." (Emphasis added.) Our cases have not been consistent on this issue however. One case, for example, held that a divorce decree which was void for lack of legal notice must nevertheless be attacked within a reasonable time under the circumstances; where the remarriage of one of the spouses had intervened, the party asserting the notice defect was held to have lost the right to object. *Swift v. Swift*, 239 Iowa 62, 68–73, 29 N.W.2d 535, 539–40 (1948). This view is consistent with the *Restatement of Judgments*, which recognizes that even a void judgment may withstand an action in equity to set it aside if the party raising the defect has been guilty of "contributory fault." It states:

> Equitable relief from a judgment may be refused to a party thereto if
> (a) before or after the judgment was rendered the complainant or a person representing him failed to use care to protect his interests, or
> (b) after ascertaining the facts the complainant failed promptly to seek redress.

*Restatement of Judgments* § 129, at 621 (1942). Application of the rule as to "void" judgments is illustrated by the *Restatement*:

> If a court would have jurisdiction to render a judgment over the defendant but for a technical failure of service, and the ensuing judgment would be void . . ., equitable relief may be denied to a person who has failed to intervene at the proper time. Thus where an action is brought against a person in the State of his domicil and service is attempted to be made upon him by leaving a summons at his

last place of residence and by an error of the sheriff the summons is left at another place, of which fact the plaintiff is ignorant but of which the defendant becomes aware, and the defendant does not enter an appearance, equitable relief may be denied him later. In such a case the defendant has not been denied a substantial opportunity of defending and a court of equity may refuse relief to one who has relied on a mere technical failure.

It is true that subject-matter jurisdiction cannot be waived or conferred by consent. However, this is not true in the case of objections to personal jurisdiction, such as involved here, which will be deemed waived unless raised "at the first opportunity, or in due or reasonable time. . . ." 21 C.J.S. *Courts* § 110, at 168–69 (1940), *accord*, 20 Am.Jur.2d *Courts* § 95, at 455–56 (1965). In the present case there can be no doubt, even if we assume an improper service of notice, that Sandra became aware of the modification at least by the time she filed her action to modify it. Nevertheless, she did not challenge the court's jurisdiction of her person in an action to set aside the 1978 default order or even at the district court level in the present case.

■ Mere passage of time, of course, does not amount to laches, *Swift v. Swift*, 239 Iowa at 69, 29 N.W.2d at 539, nor does an attack upon jurisdictional grounds fall within the time constraints of our civil rules for setting aside a default order. *Rosenburg v. Jackson*, 247 N.W.2d at 218; *Dimmitt v. Campbell*, 260 Iowa at 887–88, 151 N.W.2d at 565; 2 A. Vestal & P. Willson, *Iowa Practice*, § 47.02, at 354 (1974). However, in the circumstances of this case, which include the disruptive effect of vacating a 1978 custody order and the failure of Sandra to timely assert this issue, we conclude she has waited too long. *See Swift v. Swift*, 239 Iowa at 68–73, 29 N.W.2d at 539–40; *Restatement of Judgments, supra*, § 129, at 621–23. Whether we deem her actions to constitute a waiver of her objection to personal jurisdiction, or laches, we conclude she has lost her right to challenge the first modification order on the ground of lack of personal jurisdiction. To the

extent any of our earlier cases may be construed to be inconsistent with this holding, they are hereby overruled.

*II. The 1980 custody ruling.* We have reviewed the record de novo to assess the relative suitability of these parents to have custody of this child.

Benjamin had been in the custody of Marty for almost two years at the time of the 1977 hearing; Marty was remarried to a registered nurse and they had a daughter, Melissa, who was living in the home with Benjamin and her parents. Benjamin appeared to be well cared for and several medical problems, some dating from birth, were being treated. A medical report said Benjamin was presently a "healthy boy" who was "doing well" in Marty's home. A school report showed him to be above average in his academic progress and that he posed no discipline problems.

A party seeking a change of custody must show a superior claim, based upon an ability to minister to the child's needs more effectively than the custodial parent. *In re Marriage of Gutermuth*, 246 N.W.2d 272, 274 (Iowa 1976); *Crary v. Curtis*, 199 N.W.2d 319, 320 (Iowa 1972). The evidence relied upon by Sandra to meet that burden was concerned largely with her present employment opportunity, her past problems with Marty, and Benjamin's past medical problems. While Sandra was shown to be suitable to have custody, she has failed to demonstrate the superior parenting ability required by our rule. We conclude the court properly denied the application to modify.

AFFIRMED.